**TURNER–BASS ASSOCIATES OF TYLER, d/b/a Turner–Bass Insurance Agency, Appellant,**

v.

**Robert E. WILLIAMSON, d/b/a Williamson Paint Company, Appellee.**

No. 12–94–00196–CV.

Court of Appeals of Texas, Tyler.

Aug. 28, 1996.

Rehearing Overruled Nov. 6, 1996.

Snow E. Bush, Jr., Longview, for appellant.

Duane Stephens, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Appellant, Turner–Bass Associates of Tyler, d/b/a Turner–Bass Insurance Agency ("Turner–Bass"), appeals the trial court's judgment based on a jury verdict in favor of Robert E. Williamson, d/b/a Williamson Paint Company ("Williamson"). Turner–Bass presents one point of error contending that the evidence was legally or factually insufficient to support the jury verdict.[1] We will affirm.

Williamson was a paint contractor for approximately thirty years, and Turner–Bass was his insurance agent for several years prior to the events giving rise to the instant litigation. Williamson testified that he had done business in several states, both as a contractor and subcontractor. When Williamson worked outside of Texas, he always took his key employees from Texas and hired local employees who lived near the job site in order to reduce expenses. On December 1, 1990, Williamson, in the name of his corporation, purchased general liability and worker's compensation insurance from Turner–Bass to cover employees at a Winnsboro, Texas job where he was doing painting work as subcontractor. At trial, the trial court admitted into evidence Williamson's 1990 application for worker's compensation insurance. That application contained Williamson's signature and indicated he had "Texas only" employees. This coverage extended to December 1, 1992. Near the end of August 1991, Williamson had an opportunity to be the painting subcontractor for a job in Roswell, New Mexico, for which C Construction Company ("C Construction") was the general contractor. C Construction required that Williamson provide general liability and worker's compensation insurance in compliance with New Mexico law.

Williamson told Turner–Bass that he needed a certificate of insurance "showing general liability coverage and worker's compensation coverage for his employees." According to Williamson, Turner–Bass' agent said that it would be taken care of. Within a few days, Turner–Bass sent a "certificate of insurance" to both C Construction and to Williamson. This document certified that a worker's compensation and employer's liability policy had been issued to Williamson and plainly indicated that Williamson's operation was in New Mexico. The certificate did not purport to limit worker's compensation coverage to Williamson's employees who were Texas residents. It was undisputed that Turner–Bass knew the job was in Roswell, New Mexico, and knew that Williamson needed the insurance for the subcontract with C Construction.

---

1. Williamson's cause of action and the jury verdict submitted thereon were based in contract. Throughout its brief, Turner–Bass argues that it, as an insurance agent, had no duty to extend worker's compensation coverage to Williamson. In support of this argument, Turner–Bass cites *McCall v. Marshall*, 398 S.W.2d 106 (Tex.1965). In *McCall*, the Texas Supreme Court held:

   We are to be understood as holding that no legal duty arises on the part of an insurance agent to extend the insurance protection of his customer merely because the agent has knowledge of the need for additional insurance of that customer, especially in the absence of

   evidence of prior dealings where the agent customarily has taken care of his customer's needs without consulting him.

   *McCall*, 398 S.W.2d at 109. Turner–Bass contends that, even if it had known Williamson needed additional coverage, Turner–Bass had no legal duty to extend such coverage absent a specific request from Williamson. However, the trial court submitted Williamson's cause of action to the jury on a breach of contract theory, not negligence. Turner–Bass did not object to such submission. Turner–Bass' duty arose from its contractual obligations, not from a duty implied by law.

In regard to Williamson's request for insurance coverage for the New Mexico subcontract, Turner–Bass' employees' testimony conflicts with that of Williamson. According to the owner and employees of Turner–Bass, Williamson came into the office and stated that he was in a hurry and that he needed a certificate showing he had general liability and worker's compensation coverage for a job he had coming up in Roswell. According to James Bass, the owner of Appellant insurance company, Williamson stated that he was taking his son and a few of his Texas employees with him on the job. Apparently, Williamson and Bass never discussed whether Williamson was going to employ any New Mexico residents.

Because Williamson had been a bankruptcy debtor before the incident in question, he had to obtain all insurance through the worker's compensation assigned risk pool. Liberty Mutual was Williamson's assigned worker's compensation coverage provider. The original Liberty Mutual policy, according to its express terms, only covered Williamson's Texas employees. Williamson testified that he never saw a copy of the Liberty Mutual policy. At the same time, Williamson obtained a general liability policy covering "all states" to replace prior general liability policy which provided for "Texas only" coverage. An employee of Turner–Bass told Williamson that he needed "all states" coverage since he was doing business in another state.

While working in New Mexico, Williamson hired at least three New Mexico employees. After Liberty Mutual issued the initial worker's compensation policy, A. Flint, an auditor for Liberty Mutual, audited Williamson's payroll records to determine the amount of worker's compensation premiums due. Flint was aware of the New Mexico employees, but according to Williamson, Flint never told Williamson that the Liberty Mutual policy did not cover the New Mexico employees. Flint did not include the salaries of the New Mexico employees in determining Williamson's premium. Williamson paid his premi-

ums, and subsequently renewed the policy in December of 1991.

On April 13, 1992, Manuel Lopez, a New Mexico resident and employee of Williamson, was injured on the Roswell job site. When Williamson received notice of the worker's compensation claim, he turned it over to Turner–Bass. Turner–Bass filed a claim with Liberty Mutual, and Liberty Mutual subsequently denied the claim. At Turner–Bass' suggestion, Williamson requested that his general liability insurance carrier provide coverage. Williamson also filed the claim with C Construction's worker's compensation insurance carrier. All insurance carriers denied coverage. C Construction then notified Williamson that it would not pay any further draws to Williamson until Williamson handled Lopez' worker's compensation claim. In order to satisfy Lopez' claim and C Construction, Williamson employed an attorney, paid the worker's compensation claim, and obtained worker's compensation insurance for the New Mexico employees. Williamson testified that all policies were forwarded to C Construction and that he never received a copy of any of the worker's compensation policies. Williamson further testified that he had relied upon his request for coverage through Turner–Bass and Turner–Bass' certificate of insurance which was not expressly limited to Texas employees. After demand, Williamson filed suit against Turner–Bass alleging breach of contract and violations of the Texas Deceptive Trade Practices Act ("DTPA").[2]

■ In Turner–Bass' sole point of error, it claimed the trial court erred in denying its motion for instructed verdict, motion for judgment *non obstante verdicto*, and motion for new trial because there was no evidence or, in the alternative, factually insufficient evidence to support the jury's affirmative answer to Question 1 of the charge. Question 1, as submitted to the jury, consisted of the following:

Do you find from a preponderance of the evidence that Plaintiff and Defendant reached an agreement in which Defendant,

2. Bass impleaded Liberty Mutual, but dismissed its claim prior to the case's submission to the jury.

for consideration, agreed to provide a worker's compensation insurance policy covering Plaintiff for work performed by Plaintiff at the AMPI plant in Roswell, New Mexico in August of 1991?

Consideration is the inducement to a contract. The cause, motive, price or impelling influence which induces a contracting party to enter into a contract. The reason or material cause of a contract. Some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility, given, suffered or undertaken by the other.

An agreement between more than one party may be oral or in writing.

Turner–Bass argues that the jury's "yes" answer to the above issue effectively made Turner–Bass the insurer of Williamson rather than his insurance agent.[3] Turner–Bass contends that Williamson did not prove the essential elements of an oral insurance agreement, that there was no consideration for the insurance contract, and that there was no meeting of the minds on the subject matter of the alleged contract. We disagree.

■ In reviewing a "no evidence" or legally insufficient evidence point, an appellate court considers only the evidence which tends to support the jury's finding and disregards all contrary evidence and inferences. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 459 (Tex.1992). When an appellant attacks the legal sufficiency of the evidence to support an adverse jury finding to a special issue on which he did not have the burden of proof, that appellant must demonstrate that there is no evidence to support the adverse jury finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex.L.Rev. 361, 364–68 (1960). If any evidence of probative force supports the jury's finding, an appellate court will uphold the jury's finding. *Southern States Transport, Inc. v. State,* 774 S.W.2d 639, 640 (Tex. 1989). Evidence is legally sufficient if it is

more than a scintilla, that is, if there is at least some probative evidence, no matter how small. *Ellis County State Bank v. Keever,* 888 S.W.2d 790, 801 (Tex.1994).

■ On the other hand, when reviewing a factual insufficiency claim, an appellate court must consider and weigh all of the evidence in the case, set aside the verdict, and remand the cause for a new trial, if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

■ A contract is a promise or set of promises with legal consequences. *C & H Transp. Co. v. Wright,* 396 S.W.2d 443, 446 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.). A binding and enforceable contract is formed when, after an offer is made, the offer is unconditionally accepted and valuable consideration passes between the parties. *First Texas Savings Ass'n v. Jergins,* 705 S.W.2d 390, 391 (Tex.App.—Fort Worth 1986, no writ). Mutual assent or agreement is the essence of a contract. *W.E. Grace Mfg. Co. v. Levin,* 506 S.W.2d 580, 584 (Tex.1974). There must be a "meeting of the minds" on the subject matter of a contract. *Williford Energy Co. v. Submergible Cable Servs., Inc.,* 895 S.W.2d 379, 384 (Tex.App.—Amarillo 1994, no writ). If an alleged agreement between two parties is so indefinite as to make it impossible for a court to fix the legal obligations and liabilities of the parties, it cannot constitute an enforceable contract. *Lynx Exploration & Prod. Co. v. 4–Sight Operating Co.,* 891 S.W.2d 785, 788 (Tex. App.—Texarkana 1995, writ denied).

■ Consideration is a fundamental element of every valid contract and consists of benefit to the promisor or a loss or detriment to the promisee. *Roark v. Stallworth Oil and Gas, Inc.,* 813 S.W.2d 492, 496 (Tex. 1991). The continuation of an ongoing business relationship and the commissions on policies issued can serve as consideration for

---

**3.** Bass argues that Williamson has forced upon Bass the role of an insurer. However, Williamson's brief plainly states, "the issue is whether ... [Williamson] contracted with [Turner–Bass] to obtain a policy of insurance for [William-

son].... Bass contracted to act as Williamson's agent to secure, among other types of insurance, worker's compensation insurance for the Roswell, New Mexico job."

an agreement to provide insurance. *See Burroughs v. Bunch,* 210 S.W.2d 211, 213–14 (Tex.Civ.App.—El Paso 1948, writ ref'd). Where a policy is issued at the request of an insured, the broker receives consideration and is the agent for the insured, even though paid with commissions from the insurer. *Continental Casualty Co. v. Bock,* 340 S.W.2d 527, 532 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.). Commissions may be paid by an insurer, or by the insured. *Id.*

Upon reviewing the evidence in support of the jury's verdict, we hold that there is some evidence that Williamson and Turner–Bass reached an agreement pursuant to which Turner–Bass, for consideration, agreed to provide a worker's compensation policy covering Williamson's employees at the Roswell, New Mexico site. Williamson communicated to Turner–Bass that he needed worker's compensation insurance for his employees working at the C Construction project in New Mexico. Turner–Bass sent Williamson and C Construction a certificate of insurance which certified that Williamson had worker's compensation insurance on his employees working in New Mexico. Williamson paid premiums for worker's compensation insurance. The jury could have found from the evidence that Turner–Bass agreed to furnish worker's compensation coverage, accepted all commissions, and never complied with his agreement to provide Williamson with the worker's compensation coverage on his New Mexico employees.

Likewise, after reviewing all of the evidence in the case, we hold that the jury's verdict was not so against the great weight and preponderance of the evidence as to be manifestly unjust. Turner–Bass argues that there was no meeting of the minds because it did not know Williamson would hire New Mexico residents to work on the New Mexico project. However, the evidence showed that Turner–Bass had issued numerous policies on Williamson's behalf, beginning at least in the 1980s, when it secured an assigned risk coverage for Williamson for a North Carolina contract. Williamson followed the same procedure in New Mexico as he had in North Carolina. He took key employees from Texas and hired other laborers on site. Based on the prior dealings of the parties, the jury could reasonably have found that the parties understood the terms of their agreement.

Because there was both legally and factually sufficient evidence to support the jury's verdict, the trial court did not err in overruling Turner–Bass' motion for instructed verdict, motion for judgment *non obstante verdicto,* and motion for new trial. We therefore overrule Turner–Bass' sole point of error.

The judgment of the trial court is affirmed.