NO.
12-03-00017-CV

 

                         IN THE COURT OF APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER,
TEXAS

FREDERICK CRITCHFIELD AND               '                 APPEAL
FROM THE 362ND

CLAUDIA CRITCHFIELD,
INDIVIDUALLY

AND AS PERSONAL
REPRESENTATIVES

OF THE ESTATE OF ERIC
CRITCHFIELD,

APPELLANTS                                                    

                                                                             '                 JUDICIAL
DISTRICT COURT OF

V.                                                                                            

 

DENNIS
E. SMITH,

APPELLEE                                                       '                 DENTON
COUNTY, TEXAS

                                                                                                                                                            

                                                                     OPINION

In
three issues, Frederick Critchfield and Claudia Critchfield, individually and
as personal representatives of the estate of Eric Critchfield (Athe Critchfields@),
appeal the trial court=s
grant of partial summary judgment and bifurcation of liability and damage
issues in their lawsuit against Dennis E. Smith (ASmith@). 
We affirm in part, and reverse and remand in part.

 

Background  








In
July 1993, the Critchfields contacted Smith for advice about insuring their
home and automobiles.  Specifically, Mr.
Critchfield wanted the Amaximum@ amount of underinsured/uninsured
motorist (AUM/UIM@) coverage available to him.  After discussing their options, the
Critchfields purchased an automobile insurance policy from Nationwide Insurance
Company (ANationwide@) that provided $500,000.00 in bodily
injury liability coverage and $100,000.00 per person in UM/UIM bodily injury
coverage.  According to Mr. Critchfield,
Smith advised him that the $100,000.00 in UM/UIM coverage was an appropriate
amount because Mr. Critchfield was covered by a major medical insurance
policy.  At no time did Smith inform him
that he could have acquired $500,000.00 in UM/UIM coverage.  From 1993 to 1999, Mr. Critchfield continued
to renew his automobile insurance policy with $500,000.00 in liability coverage
and $100,000.00 in UM/UIM coverage.

On
December 20, 1999, the Critchfield=s
son, Eric, was injured during an automobile accident while riding as a
passenger in another vehicle.  On
December 28, Eric died as a result of those injuries.  In August 2000, Nationwide paid the Critchfields
the limits of their UM/UIM coverage. 
Sometime after Nationwide paid the Critchfields, the Critchfields= attorney told them that Smith could
have and should have sold them a policy with a $500,000.00 UM/UIM limit that
was equal to the limit of personal liability coverage on their automobile
insurance policy.[1]  

On
December 19, the Critchfields sued Smith, contending that Smith was negligent
in failing to 1) adequately and properly advise them on the appropriate amount
of UM/UIM coverage, 2) provide them with UM/UIM coverage in an amount equal to
the $500,000.00 limit of personal liability coverage, and 3) increase their
UM/UIM coverage at each policy renewal date from 1992 or 1993 to December of
1999.  The Critchfields also alleged
breach of contract, breach of fiduciary duty, and negligent misrepresentation
causes of action, including the recovery of reasonable attorney=s fees.

On
February 4, 2002, Smith filed a motion for partial summary judgment on the
Critchfield=s
negligence, breach of contract, and breach of fiduciary duty claims.  The Critchfields responded to the motion on
March 7.  That same day, the Critchfields
amended their original petition, adding causes of action for negligence per se
and violations of the Deceptive Trade Practices Act (DTPA).








On
April 10, the trial court granted Smith=s
motion as it pertained to the Critchfield=s
negligence, negligence per se, and breach of contract claims; however, it
denied summary judgment on the breach of fiduciary duty claim.  On April 22, the Critchfields filed a motion
to reconsider the trial court=s
April 10 ruling, and on April 29, Smith filed a motion to exclude the
Critchfields= experts
on damages and negligent misrepresentation. 
On May 16, the trial court granted the Critchfields= motion to reconsider, but only on
their negligent misrepresentation claim. 
The trial court also granted Smith=s
motion to exclude the Critchfields=
damage experts but denied the motion with regard to the negligent
misrepresentation experts.  On June 26,
the trial court, sua sponte, bifurcated the issues of Smith=s liability and any resulting damages
and also ordered that the same jury hear both trials.  

The
trial began on July 22, and the jury returned a verdict on July 26.  The jury answered Ano@ when asked whether Smith had 1)
engaged in any false, misleading or deceptive act or practice, 2) engaged in
any unconscionable action or course of action, 3) made a negligent
misrepresentation, or 4) failed to comply with his fiduciary duty to the
Critchfields.  The jury also found that
the Critchfields= own
negligence served as the proximate cause of any damages they sustained.[2]

On
October 4, the trial court entered a take-nothing judgment in Smith=s favor.  On November 4, the Critchfields filed motions
for new trial and judgment notwithstanding the verdict, which the trial court
overruled.  This appeal followed.

 

Review of the Trial Court=s Partial Summary Judgment Ruling

 

On
appeal, the Critchfields contend that the trial court erred when it granted
Smith a partial summary judgment on their negligence, negligence per se, and
breach of contract causes of action. 
They also argue that the trial court committed reversible error when it
bifurcated the liability and damage issues on its own motion.

Standard
of Review   

In
reviewing a 166a(c) motion for summary judgment, this court must apply the
standards established in Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548‑49 (Tex. 1985), which are:

 

1.             The
movant for summary judgment has the burden of showing that there is no genuine 

issue of material fact and that it is entitled to
judgment as a matter of law;








2.             In deciding whether there is a disputed material fact
issue precluding summary judgment, evidence favorable to the non‑movant
will be taken as true; and

 

3.             Every reasonable inference must be indulged in favor of
the non‑movant and any doubts resolved in its favor.

 

 

See Nixon,
690 S.W.2d at 548-49.  For a
party to prevail on a motion for summary judgment, he must conclusively
establish the absence of any genuine question of material fact and that he is
entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c).  A movant must either negate at least one
essential element of the non‑movant's cause of action, or prove all
essential elements of an affirmative defense. 
See Randall's Food Markets, Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex. 1995); see also MMP, Ltd. v. Jones, 710
S.W.2d 59, 60 (Tex. 1986).  Since the
burden of proof is on the movant, and all doubts about the existence of a
genuine issue of a material fact are resolved against the movant, we must view
the evidence and its reasonable inferences in the light most favorable to the
non-movant.  See Great Am.
Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47
(Tex. 1965).  We are not required to
ascertain the credibility of affiants or to determine the weight of evidence in
the affidavits, depositions, exhibits, and other summary judgment proof.   See Gulbenkian v. Penn, 252
S.W.2d 929, 932 (Tex. 1952).  The only
question is whether or not an issue of material fact is presented.  See Tex.
R. Civ. P. 166a(c).

Once
the movant has established a right to summary judgment, the non‑movant
has the burden to respond to the motion for summary judgment and present to the
trial court any issues that would preclude summary judgment.  See, e.g., City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).  All theories in support of or in opposition
to a motion for summary judgment must be presented in writing to the trial
court.  See Tex. R. Civ. P. 166a(c).  The summary judgment will be affirmed only if
the record establishes that the movant has conclusively proved all essential
elements of the movant=s
cause of action as a matter of law.  Lee
v. Lee, 43 S.W.3d 636, 640 (Tex. App.BFort
Worth 2001, no pet.).  This court can
affirm a summary judgment only upon the grounds raised in the motion for
summary judgment.  Id.

Negligence








The
Critchfields contend that Smith violated both common-law and statutory duties
he owed to the Critchfields by failing to offer them UM/UIM coverage in an
amount equal to their personal liability coverage.  Smith counters that he owed neither a
common-law nor a statutory duty to offer any amount over the statutory
minimum.  

Negligence
consists of three essential elements: 1) a legal duty owed by one person to
another, 2) a breach of that duty, and 3) damages proximately resulting from
the breach.  El Chico Corp. v.
Poole, 732 S.W.2d 306, 311 (Tex. 1987). 
Duty is the threshold inquiry.  Id.  When no duty exists, there can be no
negligence.  Rosas v. Buddies Food
Store, 518 S.W.2d 534, 536 (Tex. 1975). 

In
Texas, an insurance agent owes the following common-law duties to a client when
procuring insurance: 1) to use reasonable diligence in attempting to place the
requested insurance, and 2) to inform the client promptly if unable to do
so.  Moore v. Whitney-Vaky Ins.
Agency, 966 S.W.2d 690, 692 (Tex. App.BSan
Antonio 1998, no pet.) (citing May v. United Servs. Ass=n of America, 844 S.W.2d 666,
669 (Tex. 1992)).  No legal duty exists
on the part of an insurance agent to extend the insurance protection of his
customer merely because the agent has knowledge of the need for additional
insurance of that customer, especially in the absence of evidence of prior
dealings where the agent customarily has taken care of his customer=s needs without consulting him.  Pickens v. Texas Farm Bureau Ins. Cos.,
836 S.W.2d 803, 805 (Tex. App.BAmarillo
1992, no writ) (citing McCall v. Marshall, 398 S.W.2d 106, 109
(Tex. 1965)).

The
Critchfields= claim is
comparable to the underlying claim in Moore.  In that case, Moore repossessed an apartment
complex and asked McLain, an insurance agent, to handle the liability insurance
for the complex.  Moore,
966 S.W.2d at 691.  Moore thought that
the insurance would cover any and all liabilities.  Moore did not recall specifically discussing
any types of coverage with McLain, and when Moore received the policy, he did
not discuss the contents of the policy with McLain.  Id.  Five years later, the manager of the
apartment complex terminated an employee who returned to work after suffering a
work-related injury.  Id.  The employee filed suit against the apartment
complex, and Moore believed that the claim was covered by his liability
policy.  The insurance company later sent
a letter to the apartment complex, informing Moore that the claim was not
covered.  Moore then hired his own
counsel and settled the suit.  Id.








Moore
filed suit against the insurance company, the agency, and McLain, alleging claims
for negligence, breach of contract, fraud, and DTPA and Insurance Code
violations.  Moore contended that he
should have been informed of the provisions of the policy and that McLain never
told him what was in the policy.  In his
deposition, Moore admitted that McLain never told him that the liability policy
would cover all lawsuits against him and that he never asked McLain to tell him
what the policy covered.  After the
insurance company was nonsuited, McLain and the agency moved for summary
judgment, contending that no one ever represented that Moore was covered for
any particular act or conduct and that as a matter of law, no duty existed on
the part of McLain or the agency to advise Moore whether or not coverage would
be provided under the policy.  Id.  The trial court later ruled in favor of
McLain and the agency by rendering a take-nothing summary judgment against
Moore.  Id.

On
appeal, the court looked to the Texas Supreme Court=s
decision in May to determine the scope of an insurance agent=s common-law duties.  Id. at 692.  The court held that McLain did not breach the
duty to use reasonable diligence in attempting to place the requested insurance
or the duty to inform the client promptly if unable to do so.  In reaching its conclusion, the court noted
Moore=s
admission that he never requested a specific type of coverage and McLain did
provide a policy of insurance in accordance with his understanding of Moore=s expectations.  Id.  Furthermore, Moore was never A>led
wrongly to believe that [his] policy provided protection against a particular
risk that was in fact excluded from the policy=s
coverage.=@ Id.  (citing May, 844 S.W.2d at
669-70).  The court would therefore not
extend an agent=s
liability beyond affirmative misrepresentations to failures to disclose policy
coverage limitations.  Id.

The
court in May expressed the rationale behind the infeasibility of
a cause of action based on the failure to obtain complete insurance protection:
A[I]f a breach of due care can be proved
without a more concrete showing than a subsequent failure of coverage, agents
would be rendered >blanket
insurers.=@ May, 844 S.W.2d at 671.








In
the instant case, the Critchfields maintain that Smith owed them a duty to Adisclose certain information to assist
[them] in making an informed decision@
about their UM/UIM insurance coverage. 
According to McCall, such a duty to disclose information
about higher insurance coverage does not exist unless there is evidence of
prior dealings where the agent has taken care of his customer=s needs without consultation.  Id.  The summary judgment evidence reflects that
Mr. Critchfield met with Smith on Amultiple
occasions@ where
Smith Aprovided
review, analysis and advice@
regarding the Critchfields=
insurance needs.  Mr. Critchfield=s deposition testimony shows that even
though he knew that he had $100,000.00 in UM/UIM coverage, he never asked Smith
for the $500,000.00 in coverage, never asked whether any coverage was adequate,
and never asked for any different types of coverage.  He also testified that Smith never told him
the maximum amount of coverage he could buy or that $100,000.00 was the maximum
amount of UM/UIM coverage he could obtain. 


After
a thorough review of the record, we have not found any evidence that Smith
violated his specific common-law duties to 1) use reasonable diligence in
attempting to place the Critchfield=s
requested insurance, and 2) inform them if he was unable to do so.  Furthermore, the Critchfields do not direct
us to, nor can we find, any evidence in the record where Smith customarily took
care of their insurance needs without consulting them, thereby creating a duty
on Smith to extend the Critchfields=
insurance coverage.  Because no evidence
exists that 1) placed a duty on Smith to increase the Critchfields= UM/UIM coverage or 2) raised a genuine
issue of material fact demonstrating that Smith violated any common-law duty he
owed to the Critchfields, the trial court did not err in granting summary
judgment on the Critchfields=
common-law negligence claims.

Negligence
Per Se

The
Critchfields also argue that Smith=s
failure to offer higher UM/UIM limits constituted negligence per se because it
was a violation of article 5.06-1 of the Texas Insurance Code.  Negligence per se is a concept whereby a
legislatively imposed standard of conduct is adopted by courts as defining the
conduct of a reasonable and prudent person. 
Carter v. William Somerville & Son, Inc., 584 S.W.2d
274, 278 (Tex. 1979).  In such a case,
the jury is not asked to decide whether the defendant acted as a reasonable,
prudent person would have acted under the same or similar circumstances.  Id.  The statute itself states what a reasonable,
prudent person would have done.  Id.

Section
3 of article 5.06-1 of the Texas Insurance Code states, in whole, that 

 

[t]he limits of liability for bodily injury, sickness,
or disease, including death, shall be offered to the insured in amounts not
less than those prescribed in the Texas Motor Vehicle Safety-Responsibility Act
and such higher available limits as may be desired by the insured, but not
greater than the limits of liability specified in the bodily injury liability
provisions of the insured=s policy.

 

 








Tex. Ins. Code Ann. art. 5.06-1(3)
(Vernon Supp. 2004).  Section 1 of
article 5.06-1 mandates that the Acoverages
required under [article 5.06-1] shall not be applicable where any insured named
in the policy shall reject the coverage in writing. . . .@ 
Tex. Ins. Code Ann. art.
5.06-1(1) (Vernon Supp. 2004).

The
contention that an insurance agent owes a statutory duty, based on section
three of article 5.06-1,  to offer higher
limits of UM/UIM coverage was rejected in Geisler v. Mid-Century Ins. Co.,
712 S.W.2d 184, 187 (Tex.  App.BHouston 1986, writ ref=d n.r.e.).  In Geisler, Alfred Geisler died
as a result of injuries sustained in an automobile accident.  Id. at 185.  The accident was caused by the negligence of
the other driver, and she was covered by a policy with $10,000.00 per person
and $20,000.00 per occurrence.  After
Geisler=s wife
and child settled for the policy limits with the other driver=s insurance company and for $100,000.00
with his employer=s
automobile insurance company, they sought to collect $100,000.00 in UM/UIM
benefits from Mid-Century, Geisler=s
personal insurer.  Id.

After
the trial court entered a take-nothing judgment in favor of Mid-Century, the
Geislers appealed.[3]  The stipulated facts demonstrated that
Mid-Century had higher UM/UIM coverage available and would have increased
coverage had Alfred so requested.  Id.  The facts also showed that there was no
evidence to indicate that Geisler had requested higher limits or that
Mid-Century had explained to him that such higher limits were available, and
that Mid-Century did not obtain a written rejection of UM/UIM coverage from
Geisler.  Id. at
185-86.  

The
court noted that under article 5.06-1, Mid-Century had to either provide its
insured with at least the statutorily required minimum UM/UIM coverage or
obtain a written rejection of UM/UIM coverage. 
Id. at 187.  Because
Mid-Century complied with the article 5.06-1 requirement  of coverage for UM/UIM benefits in at least
the statutory minimum, it was not required to obtain a signed rejection of
UM/UIM benefits from Alfred.  Id.  Furthermore, Mid-Century had no duty to make
an affirmative offer of higher limits of UM/UIM coverage to Geisler.  Id.  

The
Critchfields make the same argument as the Geislers did in their case.  Because Smith had no duty under article
5.06-1 to offer any higher limits of UM/UIM coverage, the Critchfields
negligence per se argument must fail. 
The Critchfields=
first issue is overruled.








Breach of
Contract

In
their second issue, the Critchfields maintain that they raised a genuine issue
of material fact with regard to their breach of contract claim.  Specifically, they contend that they entered
an oral contract with Smith where Smith would Afully
advise them as to the appropriate amount of insurance coverage that they needed
and to procure the amount of coverage that [they] requested.@ 
Smith argues that the trial court properly granted summary judgment
because the Critchfields failed to produce evidence establishing that a
contract existed between Smith and the Critchfields regarding the procurement
of additional UM/UIM coverage.

To
prove a breach of contract claim, the following elements must be satisfied: 1)
a valid contract, 2) the plaintiff performed or tendered performance, 3) the
defendant breached the contract,  and 4)
the plaintiff was damaged as a result of the breach.  Richter v. Wagner Oil Co., 90
S.W.3d 890, 898 (Tex. App.BSan
Antonio 2002, no pet.).  The following
elements are required for the formation of a valid and binding contract: 1) an
offer, 2) acceptance in strict compliance with the terms of the offer, 3) a
meeting of the minds, 4) each party=s
consent to the terms, and 5) execution and delivery of the contract with the
intent that it be mutual and binding.  Wal-Mart
Stores, Inc. v. Lopez, 93 S.W.3d 548, 555-56 (Tex. App.BHouston [14th Dist.] 2002, no
pet.).  Consideration is also a
fundamental element of every valid contract. 
Turner-Bass Assocs. of Tyler v. Williamson, 932 S.W.2d
219, 222 (Tex. App.BTyler
1996, no writ).  The elements of written
and oral contracts are the same and must be present for a contract to be
binding.  Id.  AIn
determining the existence of an oral contract, the court looks to the communications
between the parties and to the acts and circumstances surrounding those
communications.@  Prime Prods., Inc. v. S.S.I. Plastics,
Inc., 97 S.W.3d 631, 636 (Tex. App.BHouston
[1st Dist.] 2002, pet. denied).








In
an affidavit attached to their response to Smith=s
motion for summary judgment, Mr. Critchfield states that Smith offered to
provide counsel and advice about obtaining automobile coverages that were
necessary and proper for the Critchfields. 
Mr. Critchfield said that he accepted the offer and paid Smith the
premium for his home and automobile coverage, with the understanding that a
portion of that premium would represent his fee or commission for Smith=s services.  He also states that he spoke with or met with
Smith on multiple occasions and that Smith provided review, analysis, and
advice pertaining to the Critchfields=
automobile insurance needs and appropriate coverages.  On more than one occasion, Mr. Critchfield
told Smith that he wanted the Amaximum
coverage@ for the UM/UIM
portion of his automobile policy.  Smith
told Mr. Critchfield that the $100,000.00 limit was enough insurance because,
in Smith=s
opinion, Mr. Critchfield had good health insurance coverage.  Mr. Critchfield believed that Smith failed to
advise, offer, or make Mr. Critchfield aware of the fact that he could purchase
UM/UIM coverage in an amount no less than the statutory minimum and as high as
the Critchfields=
$500,000.00 limit of bodily injury liability coverage.  Mr. Critchfield further stated that the
agreement Arequired
Mr. Smith to ascertain and provide the appropriate automobile insurance
coverages and with regard to underinsured coverage to provide me the maximum
coverage [he] was allowed under the policy that Mr. Smith had provided to
[him].@  In Smith=s
deposition, he admits that he gauged Mr. Critchfield as someone who was wanting
to obtain the maximum coverage he was financially capable of in order to
protect his family.  Smith also testified
that there was a contractual relationship between him and Mr. Critchfield where
he provided Mr. Critchfield with insurance advice, counsel, and coverages and
that Mr. Critchfield paid him money in the form of commissions from
Nationwide.  

Based
on the summary judgment evidence, and viewing such evidence in a light most
favorable to the Critchfields, we find that the Critchfields raised a genuine
issue of material fact on each of the elements of a valid oral contract.  Smith offered his services to advise the
Critchfields on their insurance coverages, and the Critchfields accepted this
offer.  Smith acknowledged that a
contractual relationship existed between him and the Critchfields where Smith
provided insurance advice and counsel. 
Therefore, a fact issue exists as to whether there was a meeting of the
minds and consent to the terms of the contractual relationship.  Smith=s
admission that a contract existed between him and the Critchfields also raises
a genuine issue of material fact as to whether the contract was executed with
the intent that it be mutual and binding. 









With
regard to consideration, where a policy is issued at the request of an insured,
the broker receives consideration and is the agent for the insured, even though
the agent is paid with commissions from the insurer.  Williamson, 932 S.W.2d at
223.  Smith admitted receiving
consideration from Nationwide as a result of the Critchfields= premium payments.  Therefore, a fact issue exists as to whether
Smith received consideration from the Critchfields for the insurance services
contract.  See Frazer v.
Texas Farm Bureau Mut. Ins. Co., 4 S.W.3d 819, 821 (Tex. App.B Houston [1st Dist.] 1999, no pet.)
(holding that a fact issue existed as to whether insurance agent breached an
oral contract when he did not obtain higher UM/UIM coverage).  Accordingly, the Critchfields= second issue is sustained.

 

Bifurcation of Liability and Damage Issues

In
their third issue, the Critchfields contend that the trial court erred when it
ruled, on its own motion, that the liability and damage issues would be tried
separately with the same jury.  Smith
argues that the trial court did not abuse its discretion in electing to proceed
with two trials.  Smith also contends
that the Critchfields failed to preserve error on this issue.  We agree. 


On
June 21, 2002, apparently in response to information received from the court
coordinator that the trial court would be bifurcating the trial, the
Critchfields filed a AMotion
to Clarify or Reconsider@
the trial court=s future
decision to bifurcate the trial.  On June
26, the trial court ordered that the parties would first proceed with a trial
on Smith=s
liability under the negligent misrepresentation, misrepresentation under the
DTPA, and breach of fiduciary duty causes of action alleged by the Critchfields.  The trial court also ordered that 

 

 . . . if the
jury finds that Dennis E. Smith breached a duty owed to Plaintiffs under those
three causes of action, then the trial shall proceed in which the jury will
consider damages suffered by Plaintiffs as a result of the conduct of Dennis E.
Smith, in conformance with the jury=s
findings in the initial phase of the trial.       

 

 

The Critchfields
did not object to this ruling.  

In
order to present an issue for appellate review, the record must show that a
complaint was made to the trial court by a timely request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1) (emphasis added).  The request, objection, or motion must state
the grounds for the ruling that the complaining party sought from the trial
court with sufficient specificity to make the trial court aware of the
complaint. Tex. R. App. P.
33.1(a)(1)(A).  The trial court must have
ruled on the request, objection, or motion, either expressly or
implicitly.  Tex. R. App. P. 33.1(a)(2)(A). If the trial court refused to
rule, the complaining party must have objected to the refusal. Tex. R. App. P. 33.1(a)(2)(B).  








Premature
objections preserve nothing for appellate review.  Holmes v. Concord Homes, Ltd.,
115 S.W.3d 310, 316 (Tex. App.BTexarkana
2003, no pet.).  The Critchfields= motion was filed five days before the
trial court ordered the bifurcation of liability and damage issues; therefore,
the motion was premature.  No objections
were made following the trial court=s
order.  Accordingly, the Critchfields= failed to properly preserve error on
the trial court=s
bifurcation order.  The Critchfields= third issue is overruled.

 

Conclusion 

Smith
did not owe the Critchfields either a common-law or statutory duty to offer
higher limits of UM/UIM coverage; therefore, Smith cannot be held liable under
a negligence or negligence per se theory of recovery.  However, the Critchfields produced evidence
which establishes a genuine issue of material fact as to whether a contract
existed between the Critchfields and Smith where Smith provides insurance
counsel and advice.  Accordingly, the
trial court erroneously granted summary judgment on the Critchfields= breach of contract claim.

Finally,
any error the Critchfields could assert with regard to the trial court=s order bifurcating the liability and
damage issues was waived because the Critchfields failed to properly preserve
such error.  We therefore affirm
the portion of the trial court=s
judgment 1) granting summary judgment on the Critchfields= negligence and negligence per se
causes of action and 2) bifurcating the liability and damage issues into two
trials heard by the same jury.  However,
we reverse and remand the portion of the trial
court=s grant
of summary judgment on the Critchfields=
breach of contract claim.

 

    DIANE DEVASTO   

     Justice

 

Opinion delivered April 30, 2004.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

                                                                     (PUBLISH)











[1]
Section 3 of article 5.06-1 of the Texas
Insurance Code limits UM/UIM coverage to an amount that is not less than the
statutory minimum prescribed in the Texas Motor Vehicle Safety-Responsibility
Act Aand such higher available limits as may be desired by
the insured, but not greater than the limits of liability specified in the
bodily injury liability provisions of the insured=s
policy.@  Tex. Ins. Code Ann. art. 5.06-1(3)
(Vernon Supp. 2004).  The minimum amounts
of liability insurance coverage a person must carry are 1) $20,000.00 in bodily
injury to or death of one person in one accident and 2) $40,000.00 in bodily
injury to or death of two or more persons in one accident, subject to the
$20,000.00 minimum for bodily injury to or death of one of the persons.  Tex.
Transp. Code Ann. 

' 601.072
(Vernon 1999).  





[2]
The jury attributed 75% of the negligence to
Frederick Critchfield and 25% to Claudia Critchfield.  





[3]
The opinion only states that a take-nothing
judgment was rendered in favor of Mid-Century; it does not clearly describe the
procedural history of the case.  Therefore,
we assume that Mid-Century moved for summary judgment and the take-nothing
judgment was the relief granted by the motion.