

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00319-CV

Albert Ralph **VELASQUEZ**, Associated Transportation Services, LLC, and P5 Management
Group,
Appellants

v.

Lisa **RAMIREZ**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-00229
Honorable Larry Noll, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Karen Angelini, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  October 15, 2014

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Albert Ralph Velasquez, Associated Transportation Services, LLC, and P5 Management

Group appeal the trial court's judgment awarding Lisa Ramirez damages and attorney's fees based

on the jury's verdict that Velazquez committed fraud.

### BACKGROUND

In May 2008, the City of San Antonio issued a request for proposals "for the provision of

prompt, reliable and efficient towing services for six (6) designated zones mirroring the City's

Police Substation boundaries covering the city limits of the City of San Antonio." The City had

historically contracted with a single company for the provision of towing services, but the request for proposals opened the contract to multiple companies, in part to promote minority-owned businesses.

Lisa Ramirez is the proprietor of Eagle One Towing & Hauling LLC. When she learned about the City's request for proposals, she became interested in bidding for part of the new towing contracts. She met with Velasquez about submitting a proposal to the City because Velasquez and his company, P5 Management Group,[1] had a reputation for helping minority-owned businesses apply for city contracts.

When Velasquez met with Ramirez, he opined that she was not in a position to obtain a city towing contract on her own. She asked whether forming a consortium of towing companies would increase her chances of being awarded a contract. Velasquez believed so and told her he would help the consortium obtain the contract if she was able to put it together within a week. Ramirez did as Velasquez requested and brought together several towing companies for the purpose of placing the bid.

Ramirez and the consortium members met with Velasquez to discuss details of the bid. Ramirez and several of the members testified they understood Velasquez would help them prepare a proposal to secure a contract with the City. If the consortium was successful in obtaining a contract, Velasquez would help manage the operation for one year until the consortium had enough experience to manage it themselves. Ramirez and the consortium members agreed they would submit a proposal under the name Associated Towing Team.

On June 6, 2008, Lisa Ramirez filed an assumed name certificate for a proprietorship under the name Associated Towing Team. On July 7, 2008, P5's general counsel filed a certificate of

---

[1] It appears that P5 Management Group was named "Phase 5 Management Group" during some of the events pertinent to this lawsuit.

formation for a limited liability company named Associated Transportation Services, LLC ("ATS"). The certificate named Velasquez, Jesus Rodriguez, and P5 as governing persons. On the following day, P5's general counsel filed a certificate of formation for a different limited liability company named Associated Towing Team, LLC. The certificate named ATS, Lisa Ramirez, and Carolyn Montoya as governing persons.

On July 14, 2008, Carolyn Montoya as "President and CEO" submitted a proposal to the City in the name of "Associated Towing Team." Montoya was an employee of P5. On October 9, the City Council voted to authorize negotiations with "San Antonio Associated Tow Team" for the Prue Road towing zone. On October 28, a towing contract was executed between City of San Antonio and Associated Transportation Services, LLC (signed by its legal counsel, Matt Stern) for the Prue Road zone. Emails between Stern and a city attorney regarding the proposal show that Stern told the city attorney to change the name of the contracting entity to Associated Transportation Services, LLC. At some point thereafter, Ramirez entered into a lease-to-purchase agreement with Velasquez through ATS for three towing trucks.

Eventually, Velasquez's relationship with Ramirez and the other consortium members deteriorated, and he progressively "fired" most of them, including Ramirez, from doing business under the city contract. At that point, Ramirez stopped making payments for the towing trucks under the lease-to-purchase agreement.

Ramirez sued the appellants. The jury found that Velasquez had breached an oral contract, committed fraud, and engaged in a civil conspiracy, thereby damaging Ramirez. The jury awarded Ramirez damages in the amount of $821,250 and $33,075 in attorney's fees. Ramirez elected to recover on the jury's fraud finding.

The jury also found that Ramirez breached the lease-to-purchase agreement with ATS by failing to pay for the three towing trucks. The jury found ATS was entitled to the return of the

trucks from Ramirez. The jury also found ATS should recover $74,122.50 for payments not made by Ramirez, $110,412 in damages as a result of Ramirez's breach, and $14,542 in attorney's fees.

After the parties filed post-verdict motions, the trial court rendered judgment on the jury's verdict. The trial court awarded Ramirez judgment against Velasquez in the net amount of $655,338.50.[2] The trial court ordered P5 to endorse and sign over the certificates of title to the towing trucks to Ramirez. However, the trial court did not order the return of the towing trucks to ATS.

## DISCUSSION

Appellants challenge the sufficiency of the evidence to support the jury's verdict that Velasquez committed fraud, that Velasquez participated in a civil conspiracy against Ramirez, and that there was an oral contract between Ramirez and Velasquez. Appellants also complain the evidence is insufficient to support the award of damages, the award of attorney's fees to Ramirez was not authorized by law, and the trial court erred by not ordering Ramirez to turn over the three towing trucks. Ramirez raises a conditional cross-point, asking this court to affirm the trial court's judgment on the jury's verdict that Velasquez breached an oral contract with Ramirez if we hold there was insufficient evidence to support the jury's fraud finding. She also argues that this court does not have jurisdiction over this appeal because the appellants failed to timely file their notice of appeal.

### A. JURISDICTION

Ramirez argues that this appeal should be dismissed for want of jurisdiction because the appellants did not timely file their notice of appeal.

---

[2] Although the trial court's judgment recites the jury found Ramirez liable to ATS for breach of the lease-to-purchase agreement, the judgment awarded damages for that breach to Velasquez, not ATS. No one complains about this action on appeal.

The final judgment in this case was rendered on February 6, 2013, and the appellants filed a timely motion for judgment notwithstanding the verdict on March 8, 2013. Thus, their notice of appeal was due on May 7, 2013—ninety days after the trial court rendered judgment. *See* TEX. R. APP. P. 26.1(a)(2). The appellants' notice of appeal was received by the trial court on May 22, 2013—fifteen days later than the deadline imposed by Rule 26.1.

After Ramirez brought appellants' late filing of their notice of appeal to the court's attention, appellants submitted an advisory to the court, stating that appellant's counsel mailed the notice of appeal on April 30, 2013, via the United States Postal Service. But on May 21, 2013, USPS delivered several damaged pieces of mail to appellants' counsel, which included the letter containing appellants' notice of appeal. Appellants' counsel then resubmitted the notice of appeal on May 22, 2013. Ramirez has not controverted any of appellants' factual assertions.

Although a timely notice of appeal is a jurisdictional requirement, we may extend the time to file the notice of appeal if the appellant properly files a motion to extend time within fifteen days after the deadline to file the notice of appeal. TEX. R. APP. P. 26.3. A motion to extend time is necessarily implied when an appellant, acting in good faith, files a notice of appeal beyond the time allowed by Rule 26.1, but within the fifteen-day extension period provided by Rule 26.3. *Wray v. Papp*, 434 S.W.3d 297, 299 (Tex. App.—San Antonio 2014, no pet.); *see Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997). The appellant must also offer a reasonable explanation for failing to file the notice of appeal in a timely manner. *See Jones v. City of Houston*, 976 S.W.2d 676, 677 (Tex. 1998).

Appellants filed their notice of appeal within the fifteen-day grace period and have offered a reasonable, good-faith explanation for filing it beyond the time prescribed by Rule 26.1. We therefore hold appellants timely filed their notice of appeal, and we have jurisdiction over this appeal.

## B. FRAUD

Appellants contend there is legally and factually insufficient evidence to support the jury's verdict that Velasquez committed fraud.[3] Common law fraud requires proof: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992).

- **False Material Representation**

Appellants complain that Ramirez failed to identify any specific, false representation made by Velasquez. A material representation is one which "'a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question.'" *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.)); *see also Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 613 (Tex.

---

[3] A verdict is supported by legally sufficient evidence if the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). Evidence is legally insufficient when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* When reviewing whether evidence is legally sufficient to support a verdict, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Id.*

When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407. However, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.*

App.—Waco 2000, pet. denied) ("A representation is 'material' if it is important to the party to whom it is made in making a decision regarding the particular transaction.").

Ramirez testified that Velasquez told her during their first meeting that he would help a consortium she assembled submit a proposal for a towing contract with the City. Velasquez said he would do so for "la raza."[4] Ramirez and several of the consortium's members also testified that, based on Velasquez's statements during meetings, his role was to help the consortium obtain a contract, to manage the contract for a year, and then to step away. They also testified it was never intended for Velasquez to have an ownership interest in the contract.

Appellants complain that there is no evidence to prove that Velasquez represented he would submit a proposal in Ramirez's name or help her individually win a city towing contract. We do not believe such specificity is required; it is sufficient that some evidence exists showing that Velasquez represented he would help the consortium obtain a contract with the City.

Appellants also complain about Ramirez's testimony indicating that she understood Velasquez to have told her he would manage the contract's administration for one year and then would step away is factually insufficient to support a fraud verdict because Ramirez only testified to her understanding of what Velasquez said, not to what he actually said. However, several consortium members testified that they too had the same understanding based on what Velasquez said during meetings, and one member testified that those were Velasquez's actual words.

- **Intent**

Appellants contend there is no evidence that Velasquez made any statements with the intent to deceive. A promise to act in the future may be actionable fraud when made "with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival*

---

[4] Ramirez testified "la raza" is a Spanish term meaning "the race" and she understood it to refer to Hispanics or Mexican-Americans.

*Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). "'Slight circumstantial evidence' of fraud, when considered with the breach of a promise to perform, is sufficient to support a finding of fraudulent intent." *Id.* at 435.

The jury was presented with evidence that Velasquez knew Ramirez and the other consortium members wanted to bid for the contract under the name of Associated Towing Team, but he told Ramirez not to file an assumed name certificate under that name. He then, through P5's general counsel, created a limited liability company with that same name without Ramirez's knowledge. And although Velasquez helped submit a proposal in the name of "Associated Towing Team," P5's general counsel later told a city attorney that the actual contracting entity would be Associated Transportation Services, a company which Velasquez controlled because both he and his company, P5, were governing persons at that time. Ramirez and the consortium members had no knowledge the name of the contracting entity was changed until after the contract was signed. This is sufficient circumstantial evidence in connection with Velasquez's failure to step aside from which a reasonable jury could have found the requisite fraudulent intent.

- **Detrimental Reliance**

Velasquez contends there is no evidence of detrimental reliance. To recover on a fraud claim, a plaintiff must show actual and justifiable reliance. *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010); *O'Brien v. Daboval*, 388 S.W.3d 826, 842 (Tex. App.—Houston [1st Dist.] 2012, no pet.). The inquiry into whether a plaintiff's reliance on a representation was justifiable is determined by a given plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud. *Id.* The plaintiff must prove that based on the alleged misrepresentation, he either took an action or failed to take an action, which caused him harm. *O & B Farms, Inc. v. Black*, 300 S.W.3d 418, 421 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see also Van Marcontell v. Jacoby*, 260

S.W.3d 686, 691 (Tex. App.—Dallas 2008, no pet.) ("A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment.").

There is evidence that Ramirez and the consortium members relied on Velasquez's representations because they left most of the application process in his company's hands. They did so in reliance on Velasquez's representations that he was in a better position to apply for and obtain the city contract because of his experience and knowledge; that Ramirez could not win the contract without him; that he would do everything he could to help the consortium if Ramirez formed one within a week's time; and that he wanted to help "la raza." This permitted Velasquez and P5's general counsel to change the name of the contracting entity without the consortium member's knowledge and contrary to his representation that he would relinquish managerial control within one year if awarded the towing contract. We hold the foregoing to be sufficient evidence that Ramirez detrimentally relied on Velasquez's representations.

\* \* \*

A reasonable jury could have found that Velasquez intended to use the consortium to make the proposal he submitted attractive to the City based on its desire to promote minority-owned businesses, while secretly planning to ensure the contract was actually awarded to a company he controlled. The jury could have concluded that Velasquez's representations to Ramirez and the consortium members caused them to place the application process in his hands without their oversight, thus allowing Velasquez to substitute his own entity as the contracting entity instead of the consortium. Because these conclusions afford a sufficient basis for a fraud finding, we overrule the appellants' challenge to the sufficiency of the evidence supporting the jury's finding that Velasquez committed fraud.

### C. CIVIL CONSPIRACY

Appellants complain that the evidence offered at trial was legally and factually insufficient to support the jury's verdict that Velasquez was part of a civil conspiracy that damaged Ramirez.

An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). The essential elements of the claim are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Id.*

Appellants' argument that the evidence is insufficient to support the jury's finding of a civil conspiracy is premised on their earlier argument that there was legally and factually insufficient evidence to support the jury's fraud finding. They argue that Velasquez cannot be found to have participated in a civil conspiracy without a finding that he committed some underlying tort. *See Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("[T]o prevail on a civil conspiracy claim, the plaintiff must show that the defendant was liable for some underlying tort."). However, we have held that there is sufficient evidence supporting the jury's fraud finding. We therefore overrule the appellants' sole challenge to the sufficiency of the evidence to support the jury's civil conspiracy finding.

### D. EXISTENCE OF AN ORAL CONTRACT

Appellants complain that the evidence offered at trial was legally and factually insufficient to support the jury's verdict that Velasquez had an oral contract with Ramirez to secure a towing contract from the City of San Antonio. Appellants argue that there was no meeting of the minds because there was no evidence of an offer or an agreement on any material terms of any contract. They also argue there was no evidence of consideration.

A contract is a promise or set of promises with legal consequences. *Turner-Bass Assocs. of Tyler v. Williamson*, 932 S.W.2d 219, 222 (Tex. App.—Tyler 1996, writ denied). A binding and enforceable contract is formed when, after an offer is made, the offer is unconditionally accepted ("meeting of the minds") and valuable consideration passes between the parties. *Id.* To form an enforceable contract, there must be an offer, an acceptance, and a meeting of the minds, and the terms must be expressed with sufficient certainty so that there will be no doubt as to what the parties intended. *Harris v. Balderas*, 27 S.W.3d 71, 77 (Tex. App.—San Antonio 2000, pet. denied). In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications. *Copeland v. Alsobrook*, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied).

Ramirez argues that a unilateral contract was formed when Velasquez "offered" to help a consortium she assembled bid for a city contract and she subsequently "accepted" by bringing together the consortium's members. However, at that time the only representation made by Velasquez was that he would help a consortium organized by Ramirez to obtain a contract with the City. The vague offer of help was too unspecific to constitute an offer. *See Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 793–94 (Tex. App.—Dallas 2007, no pet.).

If Velasquez's later representations concerning his temporary management of the city contract were to be construed as another offer, Ramirez has not identified any consideration that would support a contract finding based on those representations.

We sustain appellant's issue that the evidence was legally insufficient for a jury to find Ramirez had an oral contract with Velasquez.

### E. DAMAGES

Appellants contend the evidence is legally and factually insufficient to support the award of damages. Damages must be established with reasonable certainty, not mathematical precision.

*O & B Farms*, 300 S.W.3d at 422. Texas law recognizes two measures of direct damages for common law fraud: out-of-pocket damages and benefit-of-the-bargain damages. *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 636 (Tex. 2007). "Out-of-pocket damages, which derive from a restitutionary theory, measure the difference between the value of that which was parted with and the value of that which was received." *Id.* "Benefit-of-the-bargain damages, which derive from an expectancy theory, evaluate the difference between the value that was represented and the value actually received." *Id.*

Appellants argue there is legally insufficient evidence that Ramirez sustained any out-of-pocket damages. We agree because there is no evidence of any amounts expended by Ramirez in reliance on Velasquez's representations.

Appellants argue there is factually insufficient evidence that Ramirez suffered any benefit-of-the-bargain damages. Ramirez testified the towing contract was worth over eight million dollars and her company would generate one-hundred thousand dollars per year. Ramirez also testified that Velasquez owed her $40,000 and $36,000 for two months' worth of tows. Velasquez testified that the towing contract generated close to a million dollars in its first year, and that although that amount of money was insufficient to cover operating costs initially, the contract would eventually be profitable. The contract's duration was for six years, with a possible two-year extension. The jury found Ramirez's damages to be $821,250.

We hold this evidence is sufficient to support a finding that Ramirez suffered some damage from Velasquez's representations under a benefit-of-the-bargain measure of damages. However, there is no evidence to support the amount of damages found by the jury. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Group*, 299 S.W.3d 106, 123 (Tex. 2009). Ramirez's testimony as to the amount of income the contract would generate was wholly

speculative and without foundation.[5] In addition, Ramirez did not testify as to the profits she personally could expect to receive under the contract, even though Ramirez sued only in her individual capacity and not the behalf of all the members of the consortium. Thus, Ramirez's testimony did not present the jury with a valid range of damages from which it could calculate her damages with a reasonable certainty.

Although the jury was presented evidence from which it could conclude Ramirez suffered damages, it was not presented with evidence from which it could calculate her damages with a degree of reasonable certainty. We sustain the appellants' challenge to the sufficiency of the evidence supporting the jury's damages award.[6]

### F. RAMIREZ'S ATTORNEY'S FEES

Appellants complain Ramirez should not have been awarded attorney's fees because she elected to recover on the jury's fraud verdict. Generally speaking, a plaintiff recovering on a fraud cause of action will not be able to recover her attorney's fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006); *Wilson & Wilson Tax Servs., Inc. v. Mohammed*, 131 S.W.3d 231, 236 n.7 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Ramirez argues that an award of attorney's fees is permissible because the jury found that Velasquez breached a contract with Ramirez and the fraud arose from that breach. *See Wilson v. Ferguson*, 747 S.W.2d 499, 504 (Tex. App.—Tyler 1988, writ denied); *Rocha v. Merritt*, 734 S.W.2d 147, 148–49 (Tex. App.—Houston [1st Dist.] 1987, no writ). However, we have held there was legally insufficient evidence to support the jury's finding that there was an oral contract

---

[5] Ramirez testified that she had an expert who would testify to her damages, but no such testimony appears in the record.

[6] As part of this issue, appellants contend the trial court erred by submitting a single damages question tied to multiple theories of liability. Given our disposition of this appeal, we need not address this argument. Appellants also argue that the damages sought by Ramirez could only be recovered under her contract claim and not her tort claim under the economic loss rule. We disagree because we have held there was no valid contract at all.

between Ramirez and Velasquez. Necessarily, there could be no breach of a contract if one did not exist. We therefore conclude the trial court was not authorized to award Ramirez attorney's fees. We sustain the appellants' challenge to the award of those fees.

### G. COUNTERCLAIM

Appellants contend the trial court erred by not ordering Ramirez to return the three tow trucks to its possession. With respect to the appellants' counterclaim against Ramirez, the jury found:

- Lisa Ramirez breached an oral contract by failing to pay for the towing trucks;
- ATS was entitled to the return of the trucks;
- ATS suffered damages of $110,412.00 as a result of the breach; and
- ATS was owed $74,122.50 on the balance of the contract.

Ramirez correctly pointed out that the trial court could not order her to both return the tow trucks and to pay the remaining balance of the contract. If the court had done so, it would have violated the one-satisfaction rule. *See Pitman v. Lightfoot*, 937 S.W.2d 496, 533 (Tex. App.—San Antonio 1996, pet. denied) ("The single recovery, or one satisfaction rule, is a rule of general acceptance that an injured party is entitled to one satisfaction for sustained injuries."). Appellants were therefore able to elect which remedy they desired. *See id.* Because appellants failed to make an election, the trial court had the duty to make the election, using its discretion to determine which remedy afforded the greatest recovery. *See id.* Because appellants were not entitled to seek both the return of the tow trucks and the balance remaining on the contract and because they have not complained the monetary damages were a lesser recovery, we overrule their complaint that the trial court erred by failing to order the return of the tow trucks.

### CONCLUSION

We have determined that the jury's liability finding of fraud against Albert Velasquez was supported by legally and factually sufficient evidence. However, the evidence supporting the

amount of damages found by the jury was legally insufficient. An appellate court "may not order a separate trial solely on unliquidated damages if liability is contested." TEX. R. APP. P. 44.1; *Redman Homes, Inc v. Ivy*, 920 S.W.2d 664, 669 (Tex. 1996). Because there was sufficient evidence to support an award of damages, but insufficient evidence to support the amount of damages awarded by the jury and because liability on Ramirez's fraud claim was contested at trial, we must reverse the trial court's judgment in favor of Ramirez's fraud claim and remand it for a new trial. *See Akin*, 299 S.W.3d at 124; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 51 (Tex. 1998).

We reverse the part of the judgment awarding Ramirez actual damages and attorney's fees for fraud, and otherwise affirm the trial court's judgment. We remand this cause for a new trial.

Luz Elena D. Chapa, Justice