CITY OF WEST TAWAKONI,
Appellant,

v.

Charles Kenneth WILLIAMS, et ux.,
et al., Appellees.

No. 05–87–00130–CV.

Court of Appeals of Texas,
Dallas.

Dec. 1, 1987.

Rehearing Denied Jan. 11, 1988.

**490**

David S. Mallard, Gregory H. Sink, Terrell, for appellant.

Harold F. Curtis, D. Robert Smith, Greenville, for appellees.

Susan M. Horton, Carl J. Shahady, Austin, for amici curiae.

Before WHITHAM, STEWART and BAKER, JJ.

WHITHAM, Justice.

In this challenge to a water and sewer rate increase, the appellant, City of West Tawakoni, a general law municipality which owns and operates a water and wastewater utility, adopted an ordinance that increased its water and sewer rates. The resident-appellees, Charles Kenneth Williams and wife, Rose Marie Williams, doing business as, The Anchor Inn; Margie Slovacek; T.A. Gunter and wife, Ollie Gunter, doing business as, Rainbow Cove; H.A. Roberts and wife, René Roberts, and Don Underhill, doing business as, Rustic Oaks; Ray Johnson, doing business as, Horizon Estates Mobile Home Parks; and Jeanette Day, doing business as, G & H Mobile Home Parks; brought this action to enjoin the city from enforcing the ordinance. The trial court granted the residents partial summary judgment because the city failed to comply with the notice requirements of section 43(a) of the Public Utility Regulatory Act. TEX.REV.CIV.STAT.ANN. art. 1446c (Vernon Supp.1987). The trial court later rendered judgment, making its partial summary judgment the trial court's final judgment. We conclude that section 43(a) of the Act does not apply to municipally owned utilities. The city, however, did not file a motion for summary judgment. Accordingly, we reverse and remand for further proceedings in accordance with this opinion.

We begin by noting the statutory scheme. In 1985, the legislature transferred the ratemaking jurisdiction of the Public Utility Commission over water and wastewater utilities to the Texas Water Commission by the adoption of Chapter 13 of the Texas Water Code. TEX.WATER CODE ANN. § 13.001 comment (Vernon Supp.1987). The Act effecting the transfer of jurisdiction established an effective date of March 1, 1986, and provided that the transfer would not affect any judicial action or proceeding instituted prior to March 1, 1986. TEX.WATER CODE ANN. § 13.001 comment. Since this lawsuit was instituted prior to March 1, 1986, this opinion discusses the requirements in section 43 of the Public Utility Regulatory Act, not its

counterpart in section 13.187 of the Water Code, notwithstanding that the Public Utility Regulatory Act has had no application to water or wastewater utilities since March 1, 1986. Nevertheless, due to similarity of language, we understand that our opinion in the present case will bear on the provisions of the Texas Water Code.

 Next, we address the issue of the trial court's jurisdiction. Presumably, out of an abundance of precaution, the city argues that the trial court never had jurisdiction because the residents failed to exhaust administrative remedies. The residents maintain, and we so conclude, that the trial court had jurisdiction. We reach this conclusion in light of our holding that section 43(a) does not apply to municipally owned utilities. Therefore, there is an absence of jurisdiction in the administrative agency. Hence, we conclude that the doctrine of exhaustion of administrative remedies is not applicable. *See City of Sherman v. Public Utility Commission of Texas*, 643 S.W.2d 681, 683, 686 (Tex.1983). We overrule the city's second point of error. Thus, we reach the principal issue of whether section 43(a) of the Act is applicable to the city. In its first point of error, the city contends that section 43(a) is not applicable to a municipally owned utility. We agree for three reasons. First, the language of the Act indicates that section 43(a) was not intended to apply to municipally owned utilities. Second, the legislative history of the Act and the context in which section 43(a) is found indicate that section 43(a) was not intended to apply to municipally owned utilities. Third, a holding that section 43 does not apply to municipally owned utilities is necessary to avoid an unreasonable construction of the law.

 The dominant rule to be observed in the construction of a statute is to give effect to the intention of the legislature. *See Magnolia Petroleum Co. v. Walker*, 125 Tex. 430, 83 S.W.2d 929, 934 (1935). The intent of the legislature is generally obtained from the language of the statute and from the legislative history of the statute. *See Walker*, 83 S.W.2d at 934. The intent of the legislature is also obtained by considering the provision being construed in the context of the entire law in which it is found. *See Hess & Skinner Engineering Co. v. Turney*, 109 Tex. 208, 203 S.W. 593, 594 (1918). In the present case, the language of the statute, its legislative history, and the context in which section 43(a) is found indicate that section 43(a) of the Act does not apply to municipally owned utilities. In addition, a holding that section 43 of the Act does not apply to municipally owned utilities is necessary in order to avoid an unreasonable construction of the law. *See McKinney v. Blankenship*, 154 Tex. 632, 282 S.W.2d 691, 698 (1955). Unless there is no alternative, a statute will not be interpreted so as to lead to a foolish or absurd result. *McKinney*, 282 S.W.2d at 698.

*The Language of The Act Indicates That Section 43(a) Was not Intended to Apply to Municipally Owned Utilities*

Section 43(a) of the Act provides as follows:

No *utility* may make changes in its *rates* except by filing a statement of intent with the regulatory authority having original jurisdiction at least 35 days prior to the effective date of the proposed change. The statement of intent shall include proposed revisions of tariffs and schedules and a statement specifying in detail each proposed change, the effect the proposed change is expected to have on the revenues of the company, the classes and numbers of utility consumers affected, and such other information as may be required by the regulatory authority's rules and regulations. A copy of the statement of intent shall be mailed or delivered to the appropriate officer of each affected municipality, and notice shall be given by publication in conspicuous form and place of a notice to the public of such proposed change once in each week for four successive weeks prior to the effective date of the proposed change in a newspaper having general circulation in each county containing territory affected by the proposed change,

and by mail to such other affected persons as may be required by the regulatory authority's rules and regulations. Provided, however, nothing in this subsection shall apply to a water or sewer utility that:

(1) has fewer than 150 customers; and

(2) is not a member of a group filing a consolidated tax return; and

(3) is not under common control or ownership with another water or sewer utility.

(emphasis added). Hence, section 43(a) applies when a "utility" proposes to make changes in its rates. The term "utility," as defined in section 3(c) of the Act, expressly *excludes* municipally owned utilities:

The term "public utility" or "utility," when used in this Act, includes any person, corporation, river authority, cooperative corporation, or any combination thereof, *other than a municipal corporation* or a water supply or sewer service corporation, or their lessees, trustees, and receivers, now or hereafter owning or operating for compensation in this state equipment or facilities....

(emphasis added). Therefore, we conclude that since a municipally owned utility is not a "utility" as defined in the Act, section 43(a) does not literally apply to municipalities.

*The Legislative History of the Act and The Context In Which Section 43(a) Is Found Indicate That Section 43(a) Was Not Intended To Apply To Municipally Owned Utilities*

We conclude that the legislature intended the express exclusion for municipalities in the definition of "utility" to exempt municipally owned utilities from most of the Act's regulatory provisions. In *City of Sherman,* 643 S.W.2d at 683–85, the Supreme Court considered whether section 17(e) of the Act, which confers upon the Public Utility Commission exclusive original jurisdiction over "utility rates, operations, and services" outside municipal boundaries, applies to municipally owned water utilities. After examining the legislative history of the Act, the Court concluded in the following statement that the express exclusion of municipally owned utilities from the definition of "utilities" in section 3(c) of the Act was intended by the legislature to exempt municipalities from most of the Act's regulatory provisions, including section 17(e):

The Public Utility Regulatory Act (Act) was created to establish a comprehensive regulatory system over the rates, services and operations of public utilities. Prior to passage of the Act, municipalities played a major role in public utility regulation in Texas. *See generally* Newcomb, *Some Aspects of Regulation of Public Utilities Operating in the State of Texas,* 5 Baylor L.Rev. 335 (1953). *Consequently, many municipalities were concerned about state-wide regulation for two reasons:* (1) they could lose their power to franchise and regulate utilities, and (2) *municipally owned utilities could be state regulated.* Hooper, *A Legislative History of the Texas Public Utility Regulatory Act of 1975,* 28 Baylor L.Rev. 777 (1976). For these reasons, the Texas Municipal League opposed the creation of a state commission. *As a compromise, the Act retained municipal regulation within the territorial boundaries of municipalities and exempted municipally owned utilities from most of the Act's regulatory provisions....*

The legislative intent to exclude municipally owned utilities from the Act's jurisdictional provisions is clear. Section 3(c) of the Act expressly excludes municipally owned utilities from its definition of the terms "public utility" and "utility." The term "utility" specifically was used to distinguish municipally owned utilities from those utilities which are governed by the Act and, thus, to exclude municipally owned utilities from the jurisdictional provisions of section 17.

*City of Sherman,* 643 S.W.2d at 683–84 (emphasis added).

In the context of the regulatory framework established by the Act, it is evident that section 43(a) of the Act is one of the regulatory provisions of the Act that the legislature intended would not apply to mu-

nicipalities. The Act does not confer upon the Public Utility Commission original jurisdiction over the rates of municipally owned utilities. *See* article 1446c, §§ 17, 20. When it was first enacted in 1975, the Act conferred upon the Public Utility Commission *appellate* jurisdiction over the rates charged by a municipally owned *gas* or *electric* utility to ratepayers who resided outside the limits of the municipality. *See* Public Utility Regulatory Act, ch. 721, § 26(c), 1975 ' Tex.Gen.Laws 2327, 2337, *amended by* Act of May 5, 1983, ch. 263, § 26(c), 1983 Tex.Gen.Laws 1161, 1224.[1] Presently, the only jurisdiction that the Public Utility Commission has under the Act with respect to the rates of municipally owned utilities is the appellate jurisdiction respecting the rates charged by a municipally owned *electric* utility to ratepayers residing outside the city limits. Article 1446c, § 26(c). The Act does not provide appellate jurisdiction to the Public Utility Commission with respect to rates charged inside municipal boundaries by a municipally owned utility. Op.Tex.Atty.Gen. No. H–812 (1976). The Act does not confer upon the Public Utility Commission jurisdiction, original or appellate, over the rates of a municipally owned water or wastewater utility.[2] Therefore, since the Act exempts municipally owned utilities from rate regulation, it is doubtful that the Act's procedures for regulating the adoption of a rate increase in section 43 were intended to have any application to municipalities. Indeed, according to an article which discusses the relationship between the Act and municipally owned utilities, the publication requirement in section 43(a) does not apply to municipally owned utilities. Pleitz and Little, *Municipalities and the Public Utility Regulatory Act*, 28 Baylor L.Rev. 977, 980–81, 994 (1976). Also pertinent is *Public Utility Commission v. City of Austin*, 728 S.W.2d 907, 913 n. 2 (Tex.App.—Austin

1987, no writ), where the court agrees with Pleitz and Little that the Act regulates municipally owned utilities in only three areas: (1) appellate jurisdiction respecting electric rates by ratepayers outside the city limits, (2) expansion of city systems to areas served by another retail public utility and (3) certain reporting and recordkeeping requirements. These views are consistent with the statement of legislative intent contained in section 20 of the Act, which provides:

*Nothing in this article shall be construed to confer on the commission power or jurisdiction to regulate or supervise the rates or service of any utility owned and operated by any municipality within its boundaries either directly or through a municipally owned corporation, or to affect or limit the power, jurisdiction, or duties of the municipalities that have elected to regulate and supervise public utilities within their boundaries, except as provided in this Act.*

(emphasis added). We conclude, therefore, that the legislative history and the regulatory framework of the Act manifest an intent that the rates of municipally owned utilities would be exempt from rate regulation. We conclude further that it is unlikely, therefore, that the legislature intended that the procedural requirements for adopting a rate increase in section 43 of the Act would apply to municipally owned utilities.

*A Holding That Section 43 of the Act Does Not Apply To Municipally Owned Utilities Is Necessary To Avoid An Unreasonable Construction of The Law*

Section 43(a) provides for the initiation of a rate increase by requiring a "utility" to file a statement of intent with the "regulatory authority" at least 35 days prior to the

---

1. In 1983, the Public Utility Commission's appellate jurisdiction over the rates charged by a municipally owned gas utility to non-resident ratepayers was transferred to the Railroad Commission under the Gas Utility Regulatory Act. *See* TEX.REV.CIV.STAT.ANN. art. 1446e, § 3.05(c) (Vernon Supp.1987).

2. On June 1, 1987, the 70th Legislature adopted H.B. 1459, which Amends Chapter 13 of the Water Code to authorize the Water Commission to review the rates of a municipally owned water or sewer utility that are charged outside the boundaries of the municipality, if a petition requesting review is signed by the lesser of 10% or 10,000 non-resident ratepayers.

effective date of the proposed rate increase. The phrase "regulatory authority" is defined, depending on the context, as "either the [Public Utility Commission] or the governing body of any municipality." Art. 1446c, § 3(g). If section 43 applies to a municipally owned utility, the municipally owned utility, if it desires to increase its rates, must file either a statement of intent with the Public Utility Commission or a statement of intent with itself. If the municipality is required to file a statement of intent with the Public Utility Commission, then the legislative intent of the Act will be frustrated, since the intent was to exempt municipalities from the original jurisdiction of the Public Utility Commission. *See City of Sherman*, 643 S.W.2d at 685. If the municipality must file a statement of intent with itself, the result is unreasonable because it makes little sense for a city council to adopt a rate increase to be effective in 35 days and then to file a statement of intent with itself to inform itself of the action it proposes to take.

Section 43(a) further provides that a copy of the statement of intent must be "mailed or delivered to the appropriate officer of each affected municipality." If section 43(a) applies to a municipally owned utility, the municipality will be required to serve a copy of the statement of intent upon its own officials. Furthermore, section 43(b) permits the regulatory authority to allow minor rate increases to go into effect prior to the 35-day period if "good cause" is shown. This provision contemplates that the utility must convince the regulatory authority that there is "good cause" to allow the rates to go into effect. It would be unreasonable to construe section 43(b) as requiring the municipality to convince itself of the existence of good cause before allowing its own rates to go into effect. Moreover, section 43(c) authorizes the regulatory authority to hold a hearing on the rate increase and requires the regulatory authority to provide the utility with "reasonable notice" of the hearing. Again, it is unreasonable to construe the law as requiring a municipality to give itself notice of a hearing which the municipality scheduled and which the municipality intends to conduct. In addition, section 43(d) allows the regulatory authority to suspend the proposed rate increase before the increase goes into effect "after delivery to the affected utility of a statement in writing of its reasons therefor." If section 43 applies to a municipality, the municipality will be required to deliver to itself a written statement justifying its decision to suspend its own rate increase. Similarly, section 43(e) allows the utility to put its rate increase into effect if the utility files with the regulatory authority a "bond payable to the regulatory authority." If section 43 applies to a municipally owned utility, the municipality will be required to purchase a bond payable to itself. Finally, section 43(f) requires the regulatory authority to serve its final order establishing rates upon the utility. If section 43 applies to a municipally owned utility, the municipality will be required to serve itself with its own decision respecting the rate increase. We conclude that the foregoing provisions of section 43 clearly indicate that the "regulatory authority" and the "utility" in section 43 are two separate entities and demonstrate that it is unreasonable to apply section 43 to municipally owned utilities. Since it is unreasonable to construe section 43 as applying to municipally owned utilities, we conclude that the trial court erred in adopting such a construction.

### Residents Are Entitled to Notice

■■■ Due process does not require notice to the customers of the utility of a public hearing prior to setting charges for the services and commodities, since the customers have no such vested rights as would make such protection appropriate. *See Hatten v. City of Houston*, 373 S.W.2d 525, 538–39 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.). However, a decision that section 43(a) of the Act does not apply to municipally owned utilities will not achieve the result that municipalities may adopt rate increases without public notice. The Open Meetings Act requires the subject matter of every meeting of a municipal governing body to be posted continuously for a minimum of seventy-two (72) hours

preceding the meeting time, except in the case of emergencies, in which case the emergency must be expressed in the notice, and the notice must be posted for a minimum of two (2) hours. TEX.REV.CIV. STAT.ANN. art. 6252–17, § 3A(a), (h) (Vernon Supp.1987). The Supreme Court has held that the notice requirement of the Open Meetings Act requires that each item discussed by the governing body must be described in the posted notice with reasonable specificity. *Cox Enterprises, Inc. v. Board of Trustees*, 706 S.W.2d 956, 959 (Tex.1986). Therefore, application of section 43(a) of the Act to municipalities is not necessary in order to provide for public notice of a pending rate increase. Thus, we conclude that the public will be notified under the Open Meetings Act of the water and sewer rate increase of a municipally owned utility.

#### Disposition

 In light of the above, we have demonstrated three reasons why section 43(a) does not apply to municipally owned utilities. First, a reading of the Act indicates that section 43(a) does not apply to a municipally owned utility because a municipally owned utility is not a "utility" as defined in the Act and because section 43(a) applies by its terms only to a "utility." Second, the legislative history of the Act and the context of the regulatory framework established by the Act in which section 43(a) is found indicate that the legislature did not intend section 43(a) to apply to municipally owned utilities. Third, in light of the other provisions of section 43, it is unreasonable to construe the Act as requiring municipally owned utilities to comply with section 43(a). We conclude, therefore, that section 43(a) is not applicable to a municipally owned utility. We sustain the city's first point of error. It follows, therefore, that the trial court erred in applying section 43(a) to the city and in rendering summary judgment against the city. Consequently, we must reverse the trial court's judgment. In light of our opinion, we would render a take-nothing judgment in favor of the city against the residents. The city, however, failed to move for summary judgment in the trial court. This court can only reverse and remand if the successful party on appeal has not moved for summary judgment in the trial court. *CRA, Inc. v. Bullock*, 615 S.W.2d 175, 176 (Tex.1981); *Valley Forge Life Insurance Co. v. Republic National Life Insurance Co.*, 579 S.W.2d 271, 276 (Tex.Civ.App.— Dallas 1978, writ ref'd n.r.e.); *see also, Cowan v. Woodrum*, 472 S.W.2d 749, 750 (Tex.1971). If both parties file motions for summary judgment, then on appeal we may render judgment. *Tobin v. Garcia*, 159 Tex. 58, 63–64, 316 S.W.2d 396, 400–01 (1958). Thus, in the present case, we cannot render a summary judgment in favor of a party who has not moved for summary judgment in the trial court, and neither can we render judgment as a matter of law when no trial has taken place. Consequently, we can only reverse the judgment and remand the cause to the trial court for further proceedings in accordance with this opinion. *Valley Forge*, 579 S.W.2d at 276. Accordingly, we reverse the judgment of the trial court and remand the case to the trial court for further proceedings in accordance with this opinion.