Jana HARRISON, DDS and William Henson, DDS, Appellants

v.

WILLIAMS DENTAL GROUP, P.C., Williams Dental Associates, P.C., and Charles I. Williams, Sr., DDS, Appellees.

No. 05–03–00862–CV.

Court of Appeals of Texas, Dallas.

Aug. 9, 2004.

Gregory P. Standerfer, Moseley & Standerfer, Southlake, Mary K. Ludwick, Ludwick & Associates, Dallas, TX, for Appellant.

A. Robert Gloyna, Iriving, Mark D. Perdue, Storm & Hemingway, LLP, Frank E. McLain, Frank E. McLain, P.C., Dallas, for Appellee.

Before Justices FITZGERALD, RICHTER, and LANG.

## OPINION

Opinion by Justice FITZGERALD.

Jana Harrison, DDS and William Henson, DDS appeal the trial court's judgment, rendered on a jury verdict in favor of appellees Williams Dental Group, P.C., Williams Dental Associates, P.C., and Charles I. Williams, Sr., DDS ("Dr. Williams"), (collectively "Williams"). Appellants bring nine points of error, challenging the legal and factual sufficiency of the evidence supporting the jury's verdict. For the reasons that follow, we affirm in part and reverse and render in part.

### BACKGROUND

This appeal centers on the nature and extent of the final employment agreement between Harrison, a dentist, and Williams. Harrison had been an employee under contract with Williams for more than four years, working primarily in Williams's offices in Red Oak and Ferris. Her contract expired sometime in 1998. That same year, Williams opened a new office in Plano and offered Harrison a position there. Harrison was the primary dentist in the

new office, and it opened successfully under her supervision.

In February 1999, Harrison requested a meeting with Dr. Williams to discuss the office's status and to ask for a raise. The precise discussions at this meeting were addressed by both parties at trial, and their testimony will be discussed below. However, certain facts are undisputed. Harrison was earning $120,000 yearly at that time. She asked for an increase to $150,000, but Dr. Williams stated that he could not afford the requested increase. Harrison did not want an arrangement that was based solely on a percentage of her collections. The parties agreed to a compromise arrangement, whereby Harrison would receive a base salary of $120,000, plus a monthly bonus based on a percentage of her collections, minus certain expenses of her employment that were paid by Williams. Following the meeting, Dr. Williams had a contract drawn up and forwarded to Harrison. She contacted him and asked if the compensation arrangement could be made retroactive to the beginning of 1999; Dr. Williams agreed. Harrison did not sign or return the contract. Harrison worked for Williams at the Plano office until August 2001, when she was terminated.

At least twice between February 1999 and spring 2001, disputes arose concerning payment of the bonus; the record indicates the disputes were resolved by the parties. Harrison began having concerns about deductions from her bonus, and in mid–2000, Williams began having concerns about inflation of the collections attributed to Harrison by a newly hired office manager. By some time in 2000, Harrison had begun looking at office space with an eye toward opening her own practice. In April 2001, at Dr. Williams's request, Harrison and her attorney met with him to discuss issues related to the attribution of income to Harrison for bonus purposes. In May 2001, Harrison signed a lease for new office space, and the office manager printed out Williams's patient list for Harrison around this same time. Finally, in June 2001, Harrison's attorney sent a complaint in writing to Williams concerning bonus calculation concerns, and, late that month, Harrison filed this lawsuit against Williams, alleging breach of oral contract, fraud, and conversion of her wages. During this general time frame, Williams learned that appellant William Henson—Harrison's husband and also a dentist—was seeing patients at the Plano facility without Williams's consent. Based on this information, Williams terminated Harrison's employment in August 2001.

Harrison opened up an office some 100 feet from the Williams Plano office, hired a significant number of Williams's staff members, and proceeded to contact the patients on Williams's patient list. At this point, Williams counterclaimed against Harrison for conversion of Williams's office, supplies, materials, and personnel, for breach of the non-competition provisions of her contract and for fraud. Williams also filed third-party claims against Henson for conversion of Williams's office, supplies, material, and personnel, and against the office manager and Henson for conspiracy with Harrison to commit fraud.

The jury found no fraud, and it entered a take-nothing verdict against Harrison on her claim for unpaid bonus sums. The jury found for Williams on the breach and conversion claims and awarded attorney's fees to Williams. The trial court rendered judgment on the jury's verdict, and Harrison and Henson appealed.

## STANDARDS OF REVIEW

When reviewing legal sufficiency points on an issue in which the appellant did not have the burden of proof at trial, we consider only the evidence and inferences that

tend to support the finding and disregard all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex. 1989). We consider the evidence in the light most favorable to the verdict. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 458 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *Id.* When determining the factual sufficiency of the evidence in this situation, we consider and weigh all the evidence, and we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

When a party attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof at trial, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989). And when a party attacks the factual sufficiency of an adverse finding on an issue on which she had the burden of proof, we consider and weigh all of the evidence, and we set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

### BREACH OF NON-COMPETITION PROVISIONS

■ Appellants' first point of error avers there was legally and factually insufficient evidence to support the jury's answer to Jury Question No. 9 and the judgment thereon. Question No. 9 required the jury to determine whether or not Harrison and Williams Dental Associates, P.C. agreed that any of five specific provisions of the unsigned written contract were included in Harrison's employment agreement. The terms at issue read:

(1) All patients seen by Harrison were patients of Williams Dental Associates, all case records, charts and personal files concerning patients, shall belong to and remain the property of Williams, Harrison shall not be entitled to keep or reproduce such records, charts, or files relating to any patient unless the patient specifically requests that his/her records be transferred to Harrison. Such copying shall only be done with the permission of Dr. Charles I. Williams, Sr.

(2) Harrison also recognizes and acknowledges that the lists of Williams' patients are valuable and unique assets of the business, and trade secrets of Williams. Harrison agrees that he/she will not during or after the term of the agreement, copy, generate a list, or disclose any said list to any person, firm, corporation, or entity for any reason whatsoever, not make any claim or right of ownership.

(3) Harrison further agrees during the term of this Agreement and after its termination, for any reason, that Harrison will not solicit, directly or indirectly, any patient of Williams.

(4) In the course of Harrison's employment with Williams, Williams will be introducing Harrison to and making available certain contacts. As a consideration for Williams employing Harrison, Harrison agrees that he/she shall not engage in the practice of dentistry as an employee, associate, partner or otherwise within [a] six (6) mile radius of Plano, Highland Park, Preston Center or Southlake facilities for a period of two (2) years from and after date of termi-

nation of this Agreement, for any reason.

(5) Harrison specifically agrees that if, after termination of the Agreement that he/she engages in the practice of dentistry as indicated herein that Harrison shall pay to Williams a sum of Fifty Two Thousand Dollars ($52,000.00) as liquidated damages. The parties agree that they cannot fix the exact damages that may occur upon such violation of this restriction, but that $52,000.00 is an amount reasonably related to the injury that would result.

These terms are derived from paragraphs 8.2 through 9.3 of the unsigned written contract. The jury answered "yes" to each term, finding that each was a term of Harrison's employment agreement.[1]

Harrison's position throughout this litigation was that she rejected the proposed contract offered by Williams, and that the unsigned written contract did not represent her agreement with Williams. She stated the unsigned written contract included a number of items she and Dr. Williams never discussed, and the Question No. 9 issues relating to competition were among those issues never discussed.[2] Our review of the record confirms that what we will call the "non-competition provisions" were not discussed by Harrison and Dr. Williams at their February 1999 meeting. Nor do we find evidence that the parties discussed the non-competition provisions between February 1999 and the termination of Harrison's employment. Harrison argues that this lack of discussion means the non-competition provisions cannot be part of her employment agreement. We disagree with that reasoning.

An express contract, of course, arises when its terms are stated by the parties. But an implied contract can arise from the acts and conduct of the parties. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.1972). Such a contract exists when the facts and circumstances surrounding the parties' relationship imply a mutual intention to contract. *Id.* Every contract requires a meeting of the minds, but the meeting can be implied from and evidenced by the parties' conduct and course of dealing. *Id.* In this case, the trial court correctly instructed the jury that a "course of dealing" was "previous· conduct between the parties that indicates the parties' understanding of their contractual obligations." The court further instructed the jury not to consider "thoughts or intentions that the parties have not expressed to each other." This is because questions of contract formation must be resolved on objective standards, looking to the "meaning reasonably conveyed by the parties' actions and words, rather than their uncommunicated subjective intentions." *Fuqua v. Fuqua*, 750 S.W.2d 238, 245 (Tex.App.-Dallas 1988, writ denied).

Dr. Williams testified that the unsigned written contract was—except for the provision on compensation—"essentially or substantially the same" as the contracts under which Harrison had worked throughout her employ with Williams. He testified that Harrison had never expressed any disagreement with the so-called restrictive covenant and that the only change in that covenant in the new contract would be the inclusion of the Plano office as an additional point around which competition would be prohibited. Harrison testified that she

---

1. The jury went on in Question No. 10 to find that Harrison had breached all but the first of these terms (i.e., the keeping or copying of patient records).

2. As to the matters they did discuss—issues surrounding her compensation—Harrison argues they were not properly reflected in the unsigned written agreement. We discuss the compensation issue *infra*.

read the unsigned written contract drafted by Williams, but she could not say whether it was the same as any of her earlier contracts in terms of the non-competition provisions. She testified that she believed her earlier contracts had contained restrictive covenants, but that she could not be sure whether the new one was the same as the older ones. Williams acknowledges that Harrison did not sign the written agreement Dr. Williams proposed. However, Williams relies on the facts that Harrison had always been contractually bound not to compete with Williams. Moreover, Williams relies on Harrison's conduct (a) in continuing to work for Williams without a signed contract until her termination in 2001, and (b) in accepting during that time the benefits of the written agreement. That course of dealing, Williams argues, indicates Harrison in fact accepted all of the terms of the written proposal, and she should be held to them under the principles of implied contract.

We find no evidence in the record that Harrison gave any implied approval to the non-competition provisions concerning the Plano facility. There was evidence that Harrison was operating under an unwritten contract for the first time in her employment tenure with Williams. The Plano facility was a new one, in a different area of the metroplex from Harrison's earlier assignment. We do not see evidence that Harrison accepted her bonuses and the payment of her insurance premiums and license fees as evidence of acceptance of such disparate terms as those in the non-competition provisions.

■ We stress that our concern here is not with the general principles of implied contract and course of dealing. Instead, our concern is rooted in the unique nature of a covenant not to compete. At the most fundamental level an agreement not to compete is an agreement in restraint of trade. *See Martin v. Credit Prot. Ass'n,*

*Inc.,* 793 S.W.2d 667, 668 (Tex.1990); *De-Santis v. Wackenhut Corp.,* 793 S.W.2d 670, 681 (Tex.1990). A great deal of legislation and many opinions of our courts have addressed the narrow circumstances when such covenants are appropriate. *See, e.g., DeSantis,* 793 S.W.2d at 681 (covenant unenforceable on grounds of public policy unless meets test of reasonableness); *see also* TEX. BUS. & COMM.CODE ANN. § 15.50 (Vernon 2002) ("Criteria for Enforceability of Covenants Not to Compete"). Williams has not cited, and we have not found, a case that approves an implied covenant not to compete. The facts of this case give us no evidentiary basis for taking such an extraordinary step.

We find no evidence supporting an express agreement or an implied agreement between these parties on the issues involving the non-competitive provisions. Accordingly, we grant appellants' first point of error. Appellants' second point of error argues the non-competitive provisions of the unsigned contract are not legally enforceable. Appellants' third point of error argues the evidence was insufficient to support the jury's finding of a breach of those provisions. Appellants' fourth point of error argues against the sufficiency of the evidence supporting the liquidated damages award for the breach. Because we have concluded that the parties did not reach an enforceable agreement on the non-competition portions of the unsigned written contract, we need not reach these derivative points.

We reverse the trial court's judgment awarding $52,000 to Williams Dental Associates, P.C. and render judgment that Williams take nothing on its claims based on the non-competition provisions of the unsigned contract.

## ATTORNEY'S FEES

The trial court's judgment contains an award of attorney's fees to Williams based on Williams's prevailing in the trial court on the breach of contract claim. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001. The amount of fees was stipulated by the parties in the trial court, and the parties agree here that the viability of the award is dependent upon our affirming the award of damages for a breach of contract. But we have reversed the trial court's judgment as to the breach of contract claim, so we cannot uphold the award of attorney's fees based on that claim. We grant Harrison's fifth point of error.

We reverse the trial court's judgment awarding $50,000 to Williams Dental Associates, P.C. for attorney's fees and render judgment that Williams take nothing on that claim.

## CONVERSION BY HARRISON AND HENSON

The jury found that Harrison and Henson had converted supplies and materials from Williams in the total amount of $300. The trial court rendered judgment against them, jointly and severally, for that amount. However, in this Court the parties agree that there is no evidence underlying the jury's awards of $150 for converted supplies and $150 for converted materials. Accordingly, we grant appellants' seventh point of error.

We reverse the trial court's judgment awarding $300 plus interest to Williams Dental Associates, P.C. and render judgment that Williams take nothing on its conversion claim.

## LIABILITY FOR UNPAID BONUS AMOUNTS

Finally, we take up the appeal of Harrison's own claims for breach of contract. Harrison argues the jury wrongly rejected her theories of recovery concerning improper calculation of her bonus. Harrison argues that she and Williams had an oral

agreement as to her compensation, and that Williams breached the agreement by failing to pay her all of the bonus amounts to which she was entitled.

At the outset, we confirm that the parties did reach a binding oral agreement concerning Harrison's compensation. Both Dr. Williams and Harrison testified to their discussions during and after the meeting in February 1999, which led the parties to abandon a purely salary-based compensation system for one that included a salary and a bonus. Harrison worked for years under this hybrid system, with only occasional concerns as to how the bonus was being calculated. Likewise, Williams paid Harrison under this system for years, with its own occasional concerns as to how the bonus was being calculated. The parties agreed generally that the bonus calculation required certain expenses of Harrison's employment—which were paid by Williams—to be deducted in the calculation. The specific issue on which the parties disagreed at trial was whether Williams's share (i.e., the employer's share, as opposed to the employee's share) of payments for Medicare and FICA were among the expenses of Harrison's employment to be deducted.

Dr. Williams testified that when Harrison asked for a raise in February 1999, and the two discussed a salary-plus-bonus compensation, he proposed an arrangement:

that would allow her to receive as a total of 25 percent of her—of the net collections that resulted from the work that she performed after all expenses associated with her employment had been subtracted, including any dues that the company paid on her behalf, any insurance premiums that the company paid on her behalf, any FICA, Medicare payments, withholding payments that were

paid by the company for the purpose of calculating that bonus.

He said that Harrison would have preferred a straight salary increase, but she accepted this proposal as a compromise. Dr. Williams further testified that the unsigned written contract reflected the parties' agreement as to compensation. He pointed to paragraph 5.1 of that document, which specifically calls for the deduction of "William's portion of Harrison's Fica and Medicare costs." There is no question that Harrison's bonus was consistently calculated so as to deduct the employer's share of these expenses.

However, Harrison testified that deducting the employer's FICA and Medicare expenses was contrary to the parties' original oral agreement. Indeed, she testified that this discrepancy was one reason she did not sign the contract Williams delivered to her. She stated she did not agree to have all of Williams's expenses deducted from her bonus: she agreed to the deduction of specific employer-expenses, including her health and malpractice insurance premiums and her licensure fee. Harrison was confronted at trial with the documentation she had received indicating that FICA and Medicare had in fact been deducted from her bonus all along, and she had not complained. She testified that she did not realize until approximately the time of her lawsuit that the deduction was for the employer's share of these payments, as opposed to her own employee share.

Appellants' eighth and ninth points of error challenge the sufficiency of the evidence underlying the jury's negative response to Question No. 5.[3] That questions asked:

Did JANA HARRISON, D.D.S. and [Williams Dental or both of the Williams P.C.'s] agree that JANA HARRISON, D.D.S.'s compensation would include a bonus that would be calculated with all the following terms and none others:

|  | | |
|---|---|---|
|  | • | 25% of collections resulting from her production as a dentist in the Plano office |
| plus | • | 50% of the CAP collections |
| minus | • | Her malpractice insurance premiums |
| minus | • | Her group health insurance premiums |
| minus | • | Her dues to the Texas Dental Board |
| minus | • | Her salary paid to date of calculation |
| equals | • | Bonus, if any, due JANA HARRISON, D.D.S. |

The jury answered "no." This was the only question submitted to the jury that addressed the terms of the oral agreement on compensation. The question submitted Harrison's version of the agreed-upon deductions; it did not include deductions for the employer's share of FICA and Medicare.[4] And the jury rejected it.

■ We conclude Harrison has not proved the jury's answer was wrong as a matter of law, or that the jury's answer was contrary to the great weight and preponderance of the evidence. The jury heard testimony on this specific issue from the only two people who attended the meeting at which the oral agreement was

**3.** The points also challenge sufficiency of the evidence to support the "negative responses" to Questions No. 6 and 8. However, the jury did not answer those two questions because they were conditioned upon an affirmative answer to Question No. 5.

**4.** Question No. 5 also echoed Harrison's petition and its allegation concerning how the bonus was to be calculated.

reached. · Dr. Williams testified that he and Harrison agreed all employer expenses, including FICA and Medicare, would be deducted from the bonus; Harrison testified she agreed only the specific employer expenses listed in Question No. 5 would be deducted. Credibility decisions are for the jury. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex. 2003) ("[T]he jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony."). Jurors could have believed Dr. Williams's version of the terms of the oral agreement. They could have disbelieved Harrison's version of the terms as well as her statement that she did not realize these amounts were being deducted until late in the parties' relationship. We will not disturb their findings under these circumstances.[5] *See id.*

We overrule appellants' eighth and ninth points of error.

### CONCLUSION

We affirm the portion of the trial court judgment decreeing that Harrison take nothing on her claims against Williams. We reverse the portion of the trial court's judgment awarding Williams Dental Associates, P.C. a recovery of $52,000 plus interest for breach of contract and $50,000 for attorney's fees from Harrison. Finally, we reverse the portion of the trial court's judgment awarding Williams Dental Associates, P.C. a recovery of $300 plus interest from Harrison and Henson, jointly and severally. We render judgment that appellees take nothing on their breach of contract, conversion, or attorney's fees

claims. In all other respects, we affirm the judgment of the trial court.

---

**5.** We note that Harrison's brief repeatedly avers that it was "undisputed" at trial that Williams owed Harrison certain sums, including bonus payments on fees collected after Harrison's termination and bonuses calculated using "additional categories" of expense items. Our review of the record indicates these payments were indeed disputed by Williams.