

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 12, 2006

The Honorable John Carona
Chair, Committee on Transportation
   and Homeland Security
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0429

Re: Whether Wells Independent School District is subject to the policy of the City of Alto's natural gas company regarding payment deadlines and penalty assessments or to the deadlines and late charge set forth in Government Code chapter 2251 (RQ-0411-GA)

Dear Senator Carona:

Your predecessor asked whether the Wells Independent School District (the "School District") is subject to the policy of the City of Alto's natural gas company regarding payment deadlines and penalty assessments or to the deadlines and late charge set out in Government Code chapter 2251.[1] *See* TEX. GOV'T CODE ANN. § 2251.021 (Vernon Supp. 2005).

Your predecessor stated that the City of Alto (the "City") operates the Alto Natural Gas Company (the "Company"). *See* Request Letter, *supra* note 1, at 1. Under the Company's payment policy, the Company assesses "a 10% late fee beginning the 16th of the month" and proceeds with termination "if payment and penalty are not received by the 26th of the month." *Id.* In June 2001 the School District, which purchases natural gas from the Company, "received notice of late penalties and intent to terminate" because the School District had not submitted payment by the 16th of the month. *Id.* The School District suggests that it cannot guarantee payment by the 16th of any particular month because the board of trustees must approve all bills before payment. *See id.* The school board's regular monthly meeting date is prescribed by "[l]ong established . . . policies." *Id.* "Typically," once the board approves the payment, the School District mails payment "between the 11th and 17th of the month[,] and allowing for mail delivery" the Company should receive payment "by the 22nd of the month." *Id.* at 1–2.

Moreover, the School District believes that Government Code chapter 2251, which sets a different payment deadline and late charges for governmental entities generally, applies and prevails

---

[1]*See* Letter from Honorable Todd Staples, Chair, Committee on Transportation and Homeland Security, Texas State Senate, to Honorable Greg Abbott, Attorney General of Texas, at 3 (Nov. 3, 2005) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

over the local policy. *See id.* at 2; *see also* TEX. GOV'T CODE ANN. § 2251.021(a) (Vernon Supp. 2005). The Company counters that it is "required to treat all customers the same," and thus if the Company sets a payment due date and assesses a late charge after that date, "all [customers] are subject to it, or else" no one is subject to it. Request Letter, *supra* note 1, at 1. Your predecessor did not cite a legal basis for the Company's claim.[2] *See id.* at 1–3.

Under Government Code section 2251.021(a)(3), a governmental entity's payment on a contract executed on or after September 1, 1987 generally is overdue on the 31st day after the governmental entity receives the invoice:

> (a)  Except as provided by Subsection (b), a payment by a governmental entity under a contract executed on or after September 1, 1987, is overdue on the 31st day after the later of:

> > (1)  the date the governmental entity receives the goods under the contract;

> > (2)  the date the performance of the service under the contract is completed; or

> > (3)  the date the governmental entity receives an invoice for the goods or service.

> (b)  A payment under a contract executed on or after September 1, 1993, owed by a political subdivision whose governing body meets only once a month or less frequently is overdue on the 46th day after the later event described by Subsections (a)(1) through (3).

---

[2] Your predecessor suggested that the Company's payment policy is consistent with the policy articulated in title 30, section 291.87 of the Texas Administrative Code, although he acknowledged that these rules do not apply to natural gas companies. *See* Request Letter, *supra* note 1, at 1. Section 291.87 appears to apply only to entities providing potable water or sewage disposal services and not to a municipally owned natural gas company. *See* 30 TEX. ADMIN. CODE § 291.87(b) (2006) (Tex. Comm'n on Environmental Quality, Billing); *see also id.* § 291.3(50) (Tex. Comm'n on Environmental Quality, Definitions of Terms) (defining the term "utility").

In general, natural gas utility service is subject to the state's Gas Utility Regulatory Act, title 3, subtitle A of the Utilities Code, and rules adopted under that chapter, found in title 16, chapter 7 of the Texas Administrative Code. *See* TEX. UTIL. CODE ANN. § 101.001 (Vernon 1998); 16 TEX. ADMIN. CODE ch. 7 (West 2005) (R.R. Comm'n of Tex., Gas Services Division); *see also* TEX. UTIL. CODE ANN. § 101.003(7) (Vernon Supp. 2005) (defining "gas utility" generally to include an entity that distributes "combustible hydrocarbon natural gas or synthetic natural gas for sale or resale"). The Gas Utility Regulatory Act generally does not apply to municipal corporations, however. *See* TEX. UTIL. CODE ANN. § 101.003(4), (7), (10) (Vernon Supp. 2005) (defining the term "gas utility" to exclude municipal corporations except as expressly provided otherwise). Your predecessor indicated that the Company is city-owned; consequently, it is generally not subject to the Gas Utility Regulatory Act.

(c) For a contract executed on or after July 1, 1986, and before September 1, 1987, a payment by a governmental entity under that contract is overdue on the 46th day after the later event described by Subsections (a)(1) through (3).

(d) For purposes of this section, the renewal, amendment, or extension of a contract executed on or before September 1, 1993, is considered to be the execution of a new contract.

TEX. GOV'T CODE ANN. § 2251.021 (Vernon Supp. 2005); *see also id.* § 2251.001(4) (defining "payment" to mean "money owed to a vendor"). *See generally* 1 TEX. ADMIN. CODE ch. 114 (2006) (Tex. Building & Procurement Comm'n, Payment for Goods and Services) (regulating payment by state agencies, consistent with Government Code section 2251.021). The term "governmental entity" is defined for purposes of section 2251.021 as "a state agency or political subdivision of this state" and includes a public school district. TEX. GOV'T CODE ANN. § 2251.001(3) (Vernon Supp. 2005) (defining "governmental entity"); *see id.* § 2251.001(6) (defining "political subdivision" to include a school district). The statute specifically defines the term "service" to include gas utility service. *See id.* § 2251.001(7). Section 2251.025(a) directs that an overdue payment from a political subdivision "begins to accrue interest on the date the payment becomes overdue." *Id.* § 2251.025(a). Section 2251.025(b) sets the rate of interest that accrues on an overdue payment as "the rate in effect on September 1 of the fiscal year in which the payment becomes overdue," and the political subdivision must pay the interest at the time it pays the principal. *Id.* § 2251.025(b); *see also id.* § 2251.027(b) (requiring a political subdivision to pay interest "at the time payment is made on the principal"). We assume that none of the statutory exceptions set forth in section 2251.002 apply. *See id.* § 2251.002(a) (indicating that section 2251.021 and other parts of subchapter B do not apply where there is a dispute; where federal law or a federal contract applies; or where the invoice was not mailed in strict accordance with the purchase order).[3]

The Company's rate policies must be consistent with state statutory requirements, including Government Code section 2251.021. As a division of the City of Alto, we assume that the city council adopts the Company's rates and policies by ordinance. *Cf. City of W. Tawakoni v. Williams,* 742 S.W.2d 489, 490, 494–95 (Tex. App.—Dallas 1987, writ denied) (stating that the City of West Tawakoni, which adopted an ordinance increasing water and sewer rates for the city-owned water and wastewater utility, need not file rates under the Public Utility Regulatory Act but must adopt its rate-setting ordinances in compliance with the Open Meetings Act). The City of Alto, a type B general-law municipality, may adopt an ordinance "not inconsistent with state law." TEX. LOC.

---

[3]We further assume that the Company is not subject to title 15, chapter 15B of the United States Code, regulating "the transportation of natural gas in interstate commerce, . . . the sale in interstate commerce of natural gas for resale for ultimate public consumption . . . , and to natural-gas companies engaged in such transportation or sale[.]" 15 U.S.C. § 717(b) (2000); *see id.* § 717a(5)–(7) (defining the terms "natural gas," "natural-gas company," and "interstate commerce"). Natural-gas companies subject to title 15, chapter 15B of the United States Code must submit proposed rates to the Federal Trade Commission for approval. *See id.* § 717c(c).

GOV'T CODE ANN. § 51.032(a) (Vernon 1999). In addition, section 2251.002(a) outlines only three specific circumstances in which section 2251.021 does not apply, and we believe that list is exclusive. *See* TEX. GOV'T CODE ANN. § 2251.002(a) (Vernon Supp. 2005). Similarly, we determined in 2005 that a Texas county could not provide in a contract with a New Jersey vendor that New Jersey payment deadlines, rather than those set by section 2251.021, apply to the Texas county. *See* Tex. Att'y Gen. Op. No. GA-0302 (2005) at 3–4.

But the City contends that section 2251.021 does not apply because it does not have a contract with the School District, and your letter confirms that "no contract for service is on file." Request Letter, *supra* note 1, at 2. As your predecessor related, the School District states that it has requested a written contract but that none has been executed. *See id.*

"A contract is a promise or set of promises with legal consequences." *Turner-Bass Assocs. v. Williamson*, 932 S.W.2d 219, 222 (Tex. App.—Tyler 1996, writ denied). Two parties form a "binding and enforceable contract . . . when, after" one party makes an offer, the second party unconditionally accepts it "and valuable consideration passes between the parties." *Id.* A contract may be express or implied. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Harrison v. Williams Dental Group, P.C.*, 140 S.W.3d 912, 916 (Tex. App.—Dallas 2004, no pet.). The parties to an express contract have expressly set out the contract's terms, while an implied contract is inferred from the parties' acts and conduct. *See Haws & Garrett Gen. Contractors, Inc.*, 480 S.W.2d at 609; *Harrison*, 140 S.W.3d at 916.

We assume that the Company and the School District do not have an express contract. But we also believe that their acts and conduct over the course of many months, most prominently the provision of utility services and the pattern of regular billing for that service by the Company and payment of those bills by the School District, have created an implied contract.[4] Thus assuming that a contract may be implied in these particular circumstances, the deadlines that Government Code section 2251.021 specially sets for payment by a governmental body govern the School District's payment to the Company.

To specifically answer your first question, whether the School District must comply with the Company's deadlines and late charge policy, we assume that a contract may be implied and conclude that the School District need not comply with the Company's policies in this regard. *See* Request Letter, *supra* note 1, at 3. Rather, the School District is subject to the payment deadlines set in Government Code section 2251.021. *See* TEX. GOV'T CODE ANN. § 2251.021 (Vernon Supp. 2005). Payment is considered to be mailed "on the date the payment is postmarked." *Id.* § 2251.024 (Vernon 2000). Late charges are calculated under section 2251.025, Government Code. *See id.* § 2251.025 (Vernon Supp. 2005).

---

[4]We acknowledge that the existence of an implied contract, "involving as it does an inference from circumstantial evidence," is largely a question of fact that typically would not be answered in the opinion process, *Double Diamond, Inc. v. Hilco Elec. Coop.*, 127 S.W.3d 260, 267 (Tex. App.—Waco 2003, no pet.); *see Haws & Garrett Gen. Contractors, Inc.*, 480 S.W.2d at 609 (stating that it is a question of fact whether, in a particular case, a contract should be inferred); *see also* Tex. Att'y Gen. Op. No. GA-0156 (2004) at 10 (stating that fact questions cannot be answered in the opinion process), but we rely on the weight of the circumstantial evidence in this case.

In response to your second question, whether a municipally owned utility like the Company may "allow for different penalty/assessment criteria for a governmental entity that would not be available to" other customers, we conclude that it not only may but must in these circumstances. *See* Request Letter, *supra* note 1, at 3. The Company must allow the School District and other political subdivisions to pay in accordance with section 2251.021 and to pay interest on overdue payments in accordance with section 2251.025. The different treatment provided by statute for a certain class of utility customers, such as political subdivisions, is not without precedent. Municipally owned utility companies similarly are required by statute to allow certain elderly customers to delay without penalty a bill's due date to the 25th day after the bill is issued. *See* TEX. UTIL. CODE ANN. § 182.002(a) (Vernon 1998); *see also id.* § 182.001 (defining "elderly individual" and "utility").

## S U M M A R Y

Section 2251.021 of the Government Code, rather than the payment deadlines set by the municipally owned Alto Natural Gas Company, governs the Wells Independent School District's payment of a bill owed to the municipally owned natural gas company. Similarly, section 2251.025 governs the calculation and payment of interest on an overdue payment owed by the School District to the municipally owned natural gas company.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee